## 19404

The STATE, Respondent, v. Niles CROWE and Horace Wright, Jr., Appellants.

(188 S. E. (2d) 379)

*Marshall W. Abercrombie, Esq.,* of Laurens, *for Appellant,*

*William T. Jones, Esq., Sol.,* of Greenwood, *for Respondent,*

*Richard T. Townsend, Esq.,* of Laurens, *for Appellant,*

*William T. Jones, Esq., Sol.,* of Greenwood, *for Respondent,*

April 21, 1972.

LEWIS, Justice:

At a term of the General Sessions Court of Laurens County in August 1970, the appellants, Niles Crowe and Horace Wright, Jr., were convicted of the murder of James E. Spearman, a resident of Laurens County. Crowe received a death sentence; and Wright, upon a recommendation of mercy by the jury, was sentenced to life imprisonment. Both have appealed. The theory of the State's case against Crowe was that he fired the fatal shot and, as to Wright, that he was present, aiding and abetting in the commission of the crime.

While there was direct evidence of Crowe's participation in the crime, the testimony against Wright was largely circumstantial. It is undisputed that appellant Crowe fired the fatal shot, but he testified that he shot in self defense. The jury rejected his contention and found that he was guilty of murder. The record amply supports this finding and Crowe does not here contend otherwise. Appellant Wright, however, contends that the evidence was insufficient to sustain his conviction, and this presents the first question to be decided.

In determining whether the evidence was sufficient to support Wright's conviction, the testimony and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the State. Our review of the testimony is governed by this principle.

Appellants were cousins and good friends. After remaining together throughout most of the afternoon of November 22, 1969, they went to the Goodfellows Club, near Laurens, South Carolina, in Crowe's automobile, arriving there about 10 o'clock p. m. The club was an establishment where poker games were operated and this fact was known to appellants.

When appellants entered the club, there was a poker game in progress, operated by Vernon Caldwell, with seven participants, and considerable sums of money in the game and in the possession of the players. At no time during the evening did either of the appellants participate in the game, but they were in and about the poker room.

Appellants carried pistols with them to the club and, about 11:30 p. m., both showed their weapons to a third party. Crowe had on his person a loaded .38 calibre pistol and Wright a .25 calibre automatic. At that time, Crowe asked Wright if his pistol had a bullet in the chamber, to which Wright replied: "I've got one. I always stay ready."

Shortly after 12 o'clock, about thirty to forty minutes after appellants had exhibited their weapons, Crowe, while

standing in an entrance doorway, began shooting into the poker room with his .38 calibre pistol. He fired five or six shots into the room, killing the deceased. Two .38 calibre bullets were later removed from the body of the deceased and identified by an expert as having been fired from Crowe's pistol.

During the shooting, witnesses heard the sound from the firing of a smaller calibre weapon. Officers later found two .25 calibre empty cartridges on the floor and these were identified by an expert as having been fired from the .25 calibre automatic gun, previously seen in Wright's possession.

Both weapons were found in the possession of Crowe at the time of his arrest, and he testified that they were owned by him. He further testified that both guns were in his possession at the time of the shooting, but did not remember whether he fired the .25 automatic. Crowe, on leaving, stopped at the front door of the building and reloaded the .38 calibre weapon.

While Crowe was shooting into the poker room, he turned to someone, unidentified, and said, "You start getting their pocketbooks." When the shooting began, the participants in the poker game hurriedly ran out of the building for safety and left considerable money. The deceased had placed money in his pocket shortly before the shooting began. Although the deceased had money in his pocket and considerable money was left by the fleeing players, no money was subsequently found in the poker room, except some small change, and the deceased was found lying on the floor, with his empty pockets turned wrong side out.

Immediately after the shooting, Crowe sent Wright ahead to start the automobile while he held back, as he said, to keep anyone from shooting him. Both hurriedly left the scene in Crowe's automobile with Wright driving.

At the time of the incident, no one saw Wright or saw him shooting a pistol. The testimony, however, placed him in close proximity to the poker room a few minutes before

the shooting started and he and Crowe hurriedly left the building together after the shooting stopped.

"Under the modern law, he who is present at a homicide, aiding and abetting, is guilty of the homicide as a principal, even though another does the killing." 40 Am. Jur. (2d), Homicide, Section 28, p. 319. *State v. Francis*, 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133.

It is further well settled that, if two or more combine together to commit an unlawful act, such as robbery, and, in the execution of the criminal act, a homicide is committed by one of the actors, as a probable or natural consequence of the acts done in pursuance of the common design, all present participating in the unlawful undertaking are as guilty as the one who committed the fatal act. This principle was stated in *State v. Cannon*, 49 S. C. 550, 27 S. E. 526: "The common purpose may not have been to kill and murder, but if it was unlawful, as, for instance, to break in and steal, and in the execution of this common purpose a homicide is committed by one, as a probable or natural consequence of the acts done in pursuance of the common design, then all present participating in the unlawful common design are as guilty as the slayer."

It is reasonably inferable from the testimony that Crowe and Wright, relatives and friends, went to the poker club, with robbery as a motive, each armed with a weapon, Crowe with a .38 calibre pistol and Wright with a .25 automatic; that while Crowe was firing into the poker room, Wright fired his pistol, following which the robbery of the money from the poker room and the pockets of the deceased occurred; and that, in order to make their getaway, Wright went ahead to start the automobile, while Crowe stayed behind to cover their escape.

The facts and circumstances in evidence amply supported the charge that Wright was present, aiding and abetting in the commission of the crime. As such, he was guilty as a principal.

It is next contended that the trial judge erred in refusing the motion of appellants for a change of venue.

The motion was based upon the ground that a fair trial could not be had in Laurens County because of the prior newspaper publicity and the fact that the deceased was well known and popular, causing an unusual amount of discussion of the case in the community.

A Motion for a change of venue is addressed to the sound discretion of the trial judge. We find no abuse of discretion in the refusal of the motion in this case.

The trial judge conducted a careful *voir dire* examination of the jurors to determine the existence of any bias, prejudice, or adverse influence from newspaper publicity and prior discussions of the case in the community. The jurors selected to try the case stated under oath that they were not biased or prejudiced and could give the defendant a fair and impartial trial. It was apparent from the examination of the jurors that the claimed prejudice from newspaper publicity and discussions of the case in the community was not established.

Appellants also charged that the trial judge erred in refusing their motion for separate trials. While the record indicates that such motion was made only by appellant Wright, the Statement agrees that the motion was made by both appellants. Irrespective however, since Crowe received a death sentence, we have considered the motion as if made by both.

Since appellants were jointly charged with the murder of the deceased, they were not entitled to be tried separately as a matter of right. Their motion for separate trials was addressed to the discretion of the trial judge, and only an abuse of that discretion constitutes reversible error. *State v. Harvey,* 253 S. C. 328, 170 S. E. (2d) 657.

We find no abuse of discretion in the refusal of the motion for a severance and separate trials. The record discloses that Crowe fired the fatal shot and that Wright was present aiding and abetting. Crowe entered plea of self defense and testified. His testimony was generally favorable to Wright. Wright did not testify or offer any testimony, but relied upon his claim that the State had failed to prove his guilt. These defenses were not antagonistic and could be asserted in a joint trial without material prejudice to either defendant. The record discloses no legal prejudice.

It appears that Crowe called the codefendant Wright as a witness. Wright refused to become a witness, asserting his right as a defendant not to testify. The fact that the refusal to sever resulted in the failure of Crowe to have his codefendant testify in his behalf did not constitute reversible error. The record fails to show that Wright would testify if a separate trial were granted or that his testimony would exculpate the codefendant Crowe.

A defendant is not entitled, as a matter of right, to a separate trial, in order to make a codefendant available to testify. *State v. Wise,* 7 Rich. 412; *State v. McGrew,* 13 Rich. 316. And in order to justify a reversal on the foregoing ground, some prejudice arising out of the joint trial must be shown. No such prejudice is shown by the record.

Appellant Wright also contends that they should have been tried separately upon the ground that proof of the guilt of his codefendant would establish such a heinous crime as to inflame the passions of the jurors and make it impossible for him to receive a fair and just consideration by the jury of the facts applicable to him. There is no merit in this contention. Regardless of the jury's assessment of the evidence against the codefendant, the guilt of Wright depended upon a determination by the jury of whether he was present aiding and abetting in the commission of the crime. The jury was clearly and plainly so instructed

and a determination of that issue did not require a separate trial.

Finally, appellant Wright argues that he was prejudiced by a joint trial because he was thereby deprived of the right to open and close an argument to the jury. The codefendant Crowe introduced testimony. Wright did not. Wright was denied the right to open and close in argument and he contends that he was prejudiced thereby.

In a criminal prosecution, where a defendant is separately tried and introduces no testimony, he is entitled to the closing argument to the jury. However, where defendants are jointly indicted and any one of them introduces evidence, the State is entitled to the closing argument. *State v. Huckie*, 22 S. C. 298. The latter rule was properly applied by the trial judge in denying the request of the appellant Wright to be allowed the closing argument to the jury.

While not made a ground of his motion for a separate trial, appellant Wright now argues that the resulting denial of the closing argument to him should be considered in determining whether the trial judge erred in requiring a joint trial.

The fact that, upon a trial of defendants jointly indicted, the introduction of evidence by one defendant may operate to deprive a codefendant, who offers no evidence, of the right to the closing argument, to which such codefendant would be entitled if tried separately, affords no ground upon which to order separate trials. The election by a defendant to offer testimony or not is so intertwined with trial strategy, the development of the State's case, and the basic rights of the defendant until the order of argument to the jury can only be finally determined in the light of the facts developed at the trial. The right of defendants to argue to the jury can be adequately protected in a joint trial. No prejudice to appellant's rights in this regard has been shown.

Appellants also charge that the trial judge erred in admitting in evidence, over their objections, the .38 and .25 calibre weapons, used at the time of the shooting, and certain ammunition taken from the appellant Crowe at the time of his arrest. They argue (1) that the foregoing evidence was obtained as a result of an unlawful search and seizure; (2) that there was no evidence to show that the ammunition seized was at the scene of the crime; and (3) that there was no evidence to connnect the appellant Wright with the .25 calibre automatic pistol, allegedly fired by him.

After the shooting, appellants left the scene and Crowe was arrested within a few hours thereafter at his home in Spartanburg, South Carolina, under an arrest warrant charging him with murder. Crowe was in bed when the officers entered his bedroom to arrest him. They had no search warrant. When they entered, they saw a .25 calibre automatic pistol and several cartridges lying on a chair by his bed and a .38 calibre pistol was in view on the floor immediately under the bed where he was lying. Other ammunition was seen on a nearby dresser. Both weapons were within easy reach of Crowe at the time.

The foregoing weapons and ammunition were seized by the officers and admitted in evidence at the subsequent trial. Both weapons were identified as those fired at the scene of the crime and the .25 calibre automatic pistol was identified by appellant Crowe as the weapon brought into the building by appellant Wright. Additional ammunition was in the possession of appellant Crowe at the scene.

The evidence sustains the finding of the trial judge that the weapons and ammunition were lawfully seized and therefore admissible in evidence. The weapons and ammunition were in plain view of the officers at the time of arrest and in easy reach of the defendant. The officers were justified in seizing the evidence for their own protection. Since the facts and circumstances so justified the seizure of the weapons and ammunition, they were properly

admitted in evidence at the trial. *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed (2d) 685.

In *Chimel* the governing principles were thus stated: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

Appellant Wright next charges that the trial judge erred in permitting the State to introduce testimony that the appellant Crowe said, at the time of the shooting, "you start getting their pocketbooks." This testimony was properly admitted.

The person to whom Crowe made the foregoing statement was not directly identified. The statement, of course, was most significant when considered in connection with the subsequent robbery of the deceased and the money left by the fleeing participants in the poker game. The jury found, upon ample evidence, that Wright was present, aiding and abetting Crowe in the commission of the crime. It is inferable that the statement in question was made to Wright. Thus, the statement was made during the commission of the crime by

Crowe, the principal to Wright, who was present, aiding and abetting, and was clearly admissible against both.

Appellants also charge that the Court of General Sessions of Laurens County was without jurisdiction to try the case because there was no evidence to show that the alleged crime occurred in that county. Appellants simply overlook the testimony of the Sheriff and the reply witness Weersing that the scene of the crime was in Laurens County. There was no testimony to the contrary.

The next question relates to the admission of reply testimony offered by the State. The State was allowed to offer witnesses in reply to contradict appellant Crowe's testimony that he drove his automobile to the scene of the shooting.

The admission of reply testimony rests largely in the discretion of the trial judge and we find no abuse of such discretion in the rulings of the court in this regard.

The final question involves the contention of appellant Crowe that the imposition of the death penalty constitutes cruel and unusual punishment in violation of both the State and Federal Constitutions. We adhere to our previous holdings to the contrary. *Moorer v. Mac-Dougall,* 245 S. C. 633, 142 S. E. (2d) 46; *State v. Gamble,* 249 S. C. 605, 155 S. E. (2d) 916; *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111. The basis of our rejection of the contention that the death penalty is unconstitutional was succinctly stated in *Atkinson* as follows: "The statute which prescribes the penalty for murder lawfully expresses the public policy of the State. As stated in *Gamble,* 'the wisdom of this policy is a legislative question, not a judicial one'."

Since appellant Crowe received the death penalty, our consideration of this appeal has been governed by the principle that, in such cases, this Court will search the entire record for any prejudicial error affecting any substantial right of the appellant regardless of whether made the

basis of an exception. Such review of the record reveals no prejudicial error.

Judgment affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.