20167

The STATE, Respondent, v. Archie ALLEN, Appellant.

(222 S. E. (2d) 287)

*Messrs. Franklin R. Dewitt,* of Conway, and *Matthew J. Perry,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, and *J. M. Long, Jr., Sol.,* and *Jim Dunn, Asst. Sol.,* of Conway, *for Respondent,*

February 11, 1976.

Moss, Acting Associate Justice:

Archie Allen, the Appellant, was tried in Horry County before the Honorable Clarence E. Singletary on the charge of murdering one Charles McNeill, a South Carolina Game Warden. The jury returned a verdict of guilty of the murder of a law enforcement officer and the Appellant was sentenced, pursuant to Section 16-52 of the 1962 Code of Laws, to death.

The Appellant contends before this Court that he is entitled to a reversal of his conviction and a new trial. Specifically, he assigns error to the conduct of the trial court in three particulars:

(1) In refusing to grant Appellant's motion for a change of venue;

(2) In refusing to grant Appellant's motion for severance and separate trials; and

(3) In refusing to grant Appellant's motion to set aside the verdict or, in the alternative, for a new trial.

The Appellant also urges that his death sentence must be set aside because of what he perceives to be constitutional infirmities in Section 16-52.

Appellant's arguments will be considered in detail below. Initially, however, a review of the facts is necessary to an understanding of the issues.

On October 3, 1974, the Appellant, his brother, Cleve Allen, and a friend Sam Todd, were engaged in a deer drive in a rural area of Horry County. At about 11:00 A. M., South Carolina Game Wardens Charles McNeill and Floyd Benton, who were patrolling the area as part of their routine duties, met and conversed for some thirty to forty minutes with the Appellant and his companions.

That afternoon, McNeill and Benton returned to the same area and discovered that a cable, which they had previously placed across the road to keep people out of a nearby game management area, was down. They observed that a vehicle had entered the management area and proceeded to follow it. The vehicle was occupied by Cleve Allen and Sam Todd. The Wardens stopped the vehicle at approximately 2:30 P. M. and Officer McNeill issued both men a ticket. Todd and Allen, followed by the two Wardens, then drove back to the area where the cable was down.

When McNeill and Benton arrived at the cable, the Allen brothers and Todd, their vehicles parked nearby, were still present. The Wardens discovered that the cable was broken and set about repairing it.

Up to this point, the testimony of the four surviving participants of this incident was generally in agreement. Their

versions of the subsequent events were, however, widely divergent. The Appellant and his brother, Cleve Allen, testified that Sam Todd shot both Wardens. Todd testified that the Appellant instigated the trouble and shot McNeill. Todd admitted that he shot Benton.

Floyd Benton testified that McNeill stopped their car near the cable and that he took off his coat and gun and began getting the tools to repair the cable. While he was in the process of getting the tools from the trunk of his car, he observed the Appellant take his gun and walk toward the front of his truck. A few seconds later, Benton heard McNeill say, "Don't shoot me, Arch, don't shoot me." Benton saw McNeill standing a few feet away but could not, due to the positions of the vehicles, see the Appellant. Looking around, Benton observed Cleve Allen and Sam Todd sitting in Cleve's truck. He testified that he called to Cleve in an effort to get the latter to restrain his brother. Benton then heard a blast and saw McNeill fall. He testified that the blast came from the direction in which Appellant was heading when Benton had last seen him.

Benton further testified that he heard an unidentified voice say, "well, there ain't but one thing to do now and that's kill the last damn one of these sons of bitches." Benton turned to find Sam Todd aiming his shotgun at him. Todd then shot Benton down, seriously wounding him. The three men then drove off.

Immediately prior to trial, Appellant moved for a change of venue on grounds that extensive pre-trial publicity had prejudiced his right to a fair trial. After hearing oral argument and reviewing some six newspaper and magazine articles tendered by the Appellant, Judge Singletary denied the motion. Appellant contends that denial constitutes reversible error.

In *State v. Swilling*, 249 S. C. 541, 155 S. E. (2d) 607, this Court held that the moving party has the burden of showing that prospective jurors have been prejudiced by

pre-trial publicity. Further, we have held that the decision of the trial judge on motions of this nature will not be disturbed in the absence of a showing of abuse of discretion. *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287.

A review of the record fails to reveal that the trial judge abused his discretion in the instant case.

Appellant's showing in support of his motion was insufficient to carry his burden of establishing that prospective jurors had been prejudiced by the pre-trial publicity. That showing, as noted above, was limited to some six newspaper and magazine articles. None of those articles were inflammatory or accusatory toward the Appellant and none appeared to be anything but factual in nature.

Furthermore, the trial court followed the procedure approved of in our decision in *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379, cert. den., 409 U. S. 1077, 93 S. Ct. 691, 34 L. Ed. (2d) 666, in that he conducted a careful *voir dire* examination of the jurors to determine the existence of any bias or prejudice on their part. The record indicates, in fact, that the trial court propounded every one of the *voir dire* questions requested by the Appellant.

The second issue raised by the Appellant concerns the denial of his motion for severance and separate trials. That motion, made some two days prior to trial, was based upon an allegation that the defenses of the Appellant and his codefendant, Sam Todd, were antagonistic to each other and that the Appellant would be prejudiced if they were tried together.

Generally speaking, as noted by this Court on numerous occasions, the granting or denial of a motion for severance and separate trials is addressed to the discretion of the trial judge. Unless that discretion is abused, his decision will not be disturbed on appeal. *State v. Holland,* 261 S. C. 488, 201 S. E. (2d) 118, and see cases collected

under Key 622(1), and 622(2), West's South Carolina Digest, Criminal Law.

The general rule applies with equal force when, as in the instant case, the motion is based upon antagonistic defenses. *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669.

Clearly, the trial court acted properly within the bounds of its discretion. The facts in *Britt, supra,* are strikingly similar. In that case, three men were on trial for the murder of a South Carolina Highway Patrolman. As in the instant case, there was a dispute among the defendants as to who fired the fatal shot. Two of the defendants moved for severance and separate trials on the grounds of antagonistic defenses. They both denied having fired the fatal shot and one, corroborated by the third defendant, averred that the other did the shooting. The trial court denied the motion and this Court affirmed citing as authority five previous cases in which denials of motions for severance based upon antagonistic defenses had been upheld. *State v. Brown,* 108 S. C. 490, 95 S. E. 61; *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415; *State v. Francis,* 152 S. C. 17, 149 S. E. 348; *State v. Atkins,* 205 S. C. 450, 32 S. E. (2d) 372; *State v. Mathis,* 174 S. C. 344, 177 S. E. 318.

Appellant advances no reason why these decisions are not controlling and this Court is aware of none. There is no basis for a reversal on this point.

The third issue raised by the Appellant concerns the trial court's denial of his motion to set aside the verdict or, in the alternative, for a new trial. The motion was based upon alleged insufficiency of the evidence.

The granting or denial of such motions is addressed to the sound discretion of the trial court. *State v. Quillien,* 263 S. C. 87, 207 S. E. (2d) 814. Furthermore, in ruling on motions of this nature, the trial court is

concerned with the existence of evidence—not with its weight. *State v. Addis,* 257 S. C. 482, 186 S. E. (2d) 415; *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464.

■ Under the facts of the instant case, as reviewed above, the trial court acted properly within its discretion in submitting the factual issues to the jury. Undeniably, there were both direct and circumstantial evidence reasonably tended to establish the Appellant's guilt. Indeed, the testimony of Floyd Benton alone was sufficient to warrant sending the case to the jury.

The fourth and final issue raised by the Appellant concerns the constitutionality of Section 16-52 of the 1962 Code of Laws. The Appellant launches three attacks on the constitutionality of this Section. He argues:

(1) That Section 16-52 is unconstitutional under the United States Supreme Court decision in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (3d) 346;

(2) That capital punishment is "cruel and unusual punishment" and is therefore unconstitutional *per se* under the Eighth Amendment to the United States Constitution; and

(3) That capital punishment is "cruel, corporal, or unusual punishment" and is therefore unconstitutional *per se* under Article 1, Section 15 of the South Carolina Constitution.

Although these issues were neither raised before, nor ruled on by, the trial court, this Court has, *in favorem vitae* considered the Appellant's arguments thereon. *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607. We find them to be without merit. They will be discussed *seriatum.*

■ Appellant contends that Section 16-52 is unconstitutional under the *Furman* decision because imposition of the death penalty pursuant to that section is discretionary and therefore cruel and unusual punishment

under the Eighth Amendment to the United States Constitution. He specifically attacks the discretion of the jury, the Solicitor's charging discretion, the Solicitor's plea negotiation discretion, and the Governor's discretion in granting or withholding executive clemency.

The Legislature of this State, in amending Section 16-52, apparently made a conscious, deliberate effort to comply with the mandate of *Furman.* We think that effort was successful.

Although *Furman* is not subject to facile interpretation, both the majority and minority justices of that decision concur that the decision did no more than condemn legislation which vested the trial court or jury with discretion in imposing the death penalty (See Justice Marshall's dissent, joined by Justices Douglas and Brennan in *Schick v Reed,* 419 U. S. 256, 95 S. Ct. 379, 42 L. Ed. (2d) 430, and see the separate dissenting opinions, in *Furman,* of Chief Justice Burger, 408 U. S. 375-376, 398, 92 S. Ct. 2796-2797, 2808, 33 L. Ed. (2d) 427-428, 441; Justice Blackmun, 408 U. S. 413, 92 S. Ct. 2816, 33 L. Ed. (2d) 450; and Justice Powell, 408 U. S. 415-418, 92 S. Ct. 2816-2818, 33 L. Ed. (2d) 451-453).

Section 16-52 allows no such discretion to the trial judge and the jury. The statute provides certain specific, narrow, well delineated circumstances in which one who is found guilty of murder must suffer the penalty of death. In compliance with *Furman,* neither the trial judge nor jury is given any discretion in the matter.

Appellant's contentions concerning the discretion of the Solicitors and the Governor are clearly without merit. *Furman* cannot reasonably be read to extend beyond the trial judge and jury or beyond the sentencing state of the proceedings. Section 16-52 has removed the discretion condemned by *Furman;* it is therefore in compliance with that decision.

■ Appellant's next contention is that capital punishment constitutes "cruel and unusual punishment" and is therefore unconstitutional *per se* under the Eighth Amendment to the United States Constitution.

The decisions of the United States Supreme Court lend absolutely no support to the Appellant's contention. On the contrary, prior to *Furman,* the Court either expressly or impliedly upheld the constitutionality of capital punishment on numerous occasions. *Wilkerson v. Utah,* 99 U. S. 130, 25 L. Ed. 345 (1879); *In Re Kemmler,* 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519 (1890); *Weems v. United States,* 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910); *Louisiana ex rel. Francis v. Reswever,* 329 U. S. 459, 67 S. Ct. 374, 91 L. Ed. 422 (1946); *Trop v. Dulles,* 356 U. S. 86; 78 S. Ct. 590, 2 L. Ed. (2d) 630 (1958); *Witherspoon v. Illinois,* 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. (2d) 776 (1968); *McGautha v. California,* 402 U. S. 183, 91 S. Ct. 1454, 28 L. Ed. (2d) 711 (1971).

Furthermore, as this Court noted in *State v. Speights,* 263 S. C. 127, 134, 208 S. E. (2d) 43, *Furman* itself cannot be read to declare capital punishment unconstitutional *per se.*

Under the foregoing decisions and under any constitutionally sound interpretation of the Fifth, Eighth, and Fourteenth Amendments, it is clear that capital punishment does not violate the prohibition against cruel and unusual punishment.

■ Appellant's final contention is that capital punishment constitutes "cruel, corporal, or unusual punishment" and is therefore unconstitutional *per se* under Article 1, Section 15 of the South Carolina Constitution.

This Court considered this issue on no less than four occasions under Article 1, Section 19, the predecessor provision of Article 1, Section 15. On each occasion, the con-

stitutionality of capital punishment was upheld. *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379; *State v. Atkinson,* 253 S. C. 531, 172 S. E. (2d) 111; *State v. Gamble,* 249 S. C. 605, 155 S. E. (2d) 916; and *Moorer v. MacDougall,* 245 S. C. 633, 142 S. E. (2d) 46.

The Appellant relies heavily upon the fact that the language of Article 1, Section 15 differs from that of Article 1, Section 19. The former provision used the words "cruel and unusual punishment." He urges that the specific language of Article 1, Section 15 compels the conclusion that continued imposition of the death penalty is inconsistent with this new provision. We disagree.

The reasoning upon which the foregoing decisions were based is as directly applicable to Article 1, Section 15 as it was to Article 1, Section 19. See *Crowe,* 258 S. C. at 271, 188 S. E. (2d) at 385. We adhere to those decisions.

As is our custom in cases of this nature, we have, *in favorem vitae,* carefully examined the record for any errors affecting the substantial rights of the accused, even though not made a ground of appeal. We find none. Having concluded that the evidence was sufficient to sustain the verdict, and finding no errors of law in the trial, we are not warranted in disturbing the verdict and sentence imposed.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.