23143

Michael T. GOSSETT, Petitioner v. STATE of South Carolina, Respondent.

(388 S. E. (2d) 804)

Supreme Court

*Asst. Appellate Defender Stephen P. Williams,* of *S. C. Office of Appellate Defense,* Columbia, *for petitioner.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka* and *Staff Atty. Delbert H. Singleton, Jr.,* Columbia, *for respondent.*

Submitted Nov. 14, 1989.

Decided Jan. 22, 1990.

TOAL, Justice:

This case presents two issues for our decision: (1) whether the defendant was denied due process of law when the trial court refused the jury's request to view the scene of the crime; and (2) whether certain comments of the trial judge concerning the scene of the crime constitute reversible error.

## FACTS
The defendant, Michael Gossett, was charged with the crime of assault and battery with intent to kill for the

shooting of Troy Acker. Acker was working in his furniture upholstery shop, located in Spartanburg, South Carolina, on August 11, 1987. Acker testified as follows. At approximately 3:30 that afternoon, a young man entered his shop. No one else was present in the shop. The young man asked Acker if he re-upholstered cars, to which Acker replied in the negative. Acker told the man that he had a friend who did such work, and Acker proceeded to look up his friend's phone number. As Acker was doing this, he was shot at close range, the bullet entering his temple and exiting his mouth.

Instead of collapsing, Acker testified that he jumped up from his chair upon realizing he had been shot. The young man then fled the shop. Acker later positively identified Gossett as his assailant when he spotted Gossett while Gossett was waiting for a preliminary hearing. Acker testified that he recognized Gossett "readily" and identified him as the culprit before the police told him that Gossett was the man charged.

Three other witnesses testified for the State. Michael Gentry stated that he approached the police upon seeing them at the upholstery shop and that he informed them that he had seen Gossett on the street near the upholstery shop between 3:00 and 3:15. Joe Williams, who worked at a nearby automobile dealership, testified that he saw Gossett running out of the upholstery shop immediately after the gunshot was fired. Detective John Hall testified that Gossett made the statement "why would I shoot the old man for nothing?" before he had told Gossett the victim's age and before he had informed Gossett that nothing was stolen from the upholstery shop.

Gossett's defense was that he had been mistakenly identified as the culprit. His case pointed out several conflicts among the State's witnesses concerning what color clothes he was wearing. He also presented an alibi witness. Gossett himself contradicted Detective Hall's testimony, stating that he was asked "why would you want to rob that old man?", the question serving to notify him of Acker's age.[1]

---

[1] We note regarding Gossett's credibility that he had a previous conviction for housebreaking and larceny in 1981, and for storebreaking and larceny in 1982.

Gossett was found guilty after a January 19, 1988 trial, and did not file an appeal. Gossett next sought post-conviction relief, but was denied it. He then petitioned this Court for a writ of certiorari and review of his claims for post-conviction relief.

Among the grounds for relief argued, Gossett asserted that he had not been informed of his right to a direct appeal. The PCR judge found that Gossett had been so informed. The appropriate scope of review of this finding is that "any evidence" of probative value is sufficient to uphold the PCR judge's findings. *Webb v. State,* 281 S. C. 237, 314 S. E. (2d) 839 (1984).

At the PCR hearing, Gossett's trial attorney testified that he "thought" he had informed Gossett of his right to an appeal before the trial, and that he had no recollection of informing Gossett of his rights to an appeal after the trial. There is no evidence that trial counsel informed Gossett of the manner of and method for filing an appeal, nor is there evidence that counsel attempted to ascertain whether Gossett wished to file an appeal. We concluded that Gossett did not knowingly and intelligently waive his right to a direct appeal. *See Cherry v. State,* 386 S. E. (2d) 624 (S. C. 1989). We granted the petition for certiorari on this ground and directed the petitioner to brief his direct appeal issues for our review pursuant to *White v. State,* 263 S. C. 110, 208 S. E. (2d) 35 (1974).

## LAW/ANALYSIS

## I. REFUSAL TO GRANT JURY REQUEST TO VIEW THE SCENE OF THE CRIME

At the end of the trial, when the jury was deliberating, they asked the trial judge in a note if they could view the scene of the crime. This request apparently stemmed from the jurors' belief that it would aid them in judging Joe Williams' testimony that, from his workplace vantage point, he saw the defendant flee. The trial judge responded as follows:

THE COURT: Mr. Foreman, I have the note you've sent me in regarding some distances, and a request to visit the sight. (sic) The distances—some of the distances as I

recollect were offered into evidence. Of course, I couldn't—I'm not allowed to comment on them. But rather have to leave that to the recollection of you twelve. But the sight (sic) is—would be another piece of evidence. Neither the State nor the defense considered the sight (sic) important to offer in into evidence. Therefore, I'm not permitted to let you go out there.

(App. 148, 11. 21-25; App. 149, 11. 1-6). Gossett complains that the trial judge's refusal to honor the jury's request was error. We disagree.

The jury's viewing of the scene of the crime is governed by S. C. Code Ann. § 14-7-1320 (Law. Co-op. 1976). This statute reads:

> The jury in any case may, *at the request of either party,* be taken to view the place or premises in question or any property, matter or thing relating to the controversy between the parties *when it appears to the court that such view is necessary to a just decision ...*

(emphasis added).

The trial judge made a technical error in characterizing the jury's view of the scene of the crime as other "evidence." Viewing the premises is not regarded as taking evidence. *Baroody v. Anderson,* 195 S. C. 422, 11 S. E. (2d) 860 (1940). Thus, as a technical matter, it is true that the jury's view of the crime situs need not be "offered into evidence." However, the maxim *lex non curat de minimis*[2] is applicable here. Although one does not "offer a jury's view of the scene into evidence," the statute does mandate that a party make a motion before the jury may be allowed to view the crime situs. Thus, as a practical matter, the trial judge was correct in his view that he had no discretion to allow the jury to visit the scene.

Moreover, assuming *arguendo* that such a motion had been made, § 14-7-1320 mandates that the trial judge regard such a view of the scene as "necessary to a just decision" before he can allow it. Here, there is evidence that the crime scene has been altered substantially since the crime oc-

---

[2] The law cares not about trifles. BLACK'S LAW DICTIONARY 821 (5th ed. 1979).

curred. It would therefore be of little, if any, probative value for the jury to view it.

## II. ALLEGEDLY IMPROPER COMMENTS BY THE TRIAL COURT

Gossett next complains that the trial judge improperly commented on the evidence when he stated to the jury, "neither the State nor the defense considered the sight (sic) sufficiently important to offer it into evidence." We find no reversible error.

Even assuming that it was error for the trial judge to so comment, the error would be harmless in light of the overwhelming evidence of the guilt of the accused. Whether trial errors are harmless depends upon the circumstances of the particular case. The materiality and prejudicial character of an alleged error must be determined from its relationship to the entire case. Trial errors are harmless when they could not reasonable have affected the result of the trial. *State v. Mitchell*, 286 S. C. 572, 336 S. E. (2d) 150 (1985).

Beyond the evidence of Gossett's guilt already recited, we perceive Gossett's trial strategy as asserting that Michael Gentry committed the crime, and that Gossett was mistakenly identified. Since Gentry was a witness at the trial, he and Gossett were subject to a lengthy comparison by witness Joe Williams and by the victim. Nevertheless, Williams testified that it was Gossett who fled from the upholstery shop after the gun shot, and Acker testified that Gossett was his assailant without a doubt. Therefore, this argument is also without merit.

Accordingly, the judgment of the lower court is affirmed.