2440

The STATE, Respondent v. Rodney MOUZON, Appellant.

(467 S.E. (2d) 122)

Court of Appeals

GOOLSBY, J., filed an opinion concurring in part and dissenting in part.

*Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka,* and *Assistant Deputy Attorney General Salley W. Elliott,* Columbia; and *Solicitor Donald V. Meyers,* Lexington, *for respondent.*

Heard Nov. 9, 1995.

Decided Dec. 28, 1995; Reh. Den. Feb. 22, 1995.

CURETON, Judge:

Appellant, Rodney Mouzon, was indicted for murder, conspiracy to distribute crack cocaine, and possession of a firearm during the commission of a violent crime. The jury acquitted Mouzon on the murder charge, but convicted him of conspiracy to distribute crack cocaine and possession of a firearm during the commission of a violent crime. He was sentenced to twenty-five years imprisonment on the conspiracy charge and a consecutive five-year prison term on the weapon charge. Mouzon appeals the denial of his motion for a directed verdict on the conspiracy charge. He further asserts the trial court committed reversible error by denying him the right to present the last closing argument to the jury solely because his request that the jury view the crime scene was granted. We reverse the conspiracy and firearm convictions.[1]

---

[1] S.C. Code § 16-23-490 (Supp. 1994) provides that the penalty for possession of a firearm during the commission of a violent crime is contingent upon conviction for "a violent crime as defined in Section 16-1-60." Ordinarily, Mouzon would only be entitled to a new trial on the weapons charge. How-

## I.

Defense counsel made a pretrial motion to permit the jury to visit the scene of the crime after dark. The prosecution raised no objection to this motion, and the jury was taken to view the scene. No defense attorneys, solicitors, or either of their staffs went to the scene with the jury. There was also no court reporter present when the jury viewed the scene.

After Mouzon rested his case without presenting any testimony or exhibits, the prosecution asserted for the first time that Mouzon was not entitled to present the last closing argument to the jury because he presented evidence by putting the jury scene into evidence. The trial court agreed. Defense counsel objected, stating the jury view, as ordered by the court, did not constitute the introduction of evidence. Maintaining that the entire defense strategy was to position itself to present the final summation to the jury, Mouzon's counsel insisted upon that right. The court, nevertheless, ruled the jury view constituted evidence, and as such, permitted the State to argue last. We hold this was error.

The appellate courts of this State have previously addressed this issue, and held that a jury view is not regarded as evidence, *Gossett v. State*, 300 S.C. 473, 388 S.E. (2d) 804 (1990); *Jacks v. Townsend*, 288 S.C. 26, 88 S.E. (2d) 776 (1955); *City of Columbia v. Jennings*, 288 S.C. 79, 339 S.E. (2d) 534 (Ct. App. 1986), or the taking of testimony. *State v. Plath*, 281 S.C. 1, 313 S.E. (2d) 619 (1984); *State v. Suber*, 89 S.C. 100, 71 S.E. 466 (1911). In coming to this conclusion, the courts have explained that the jury view is simply a means for the jury to better understand evidence presented in the courtroom. *Jacks*, 228 S.C. 26, 88 S.E. (2d) 776; *Jennings*, 288 S.C. 79, 339 S.E. (2d) 534. Moreover, S.C. Code Ann. § 14-7-1320 (1976) provides that a jury may be taken to view the "place" in question upon the request of either party and where the court determines that it is necessary for a fair determination of the issues.

Although the State concedes that the law is clear that a jury view does not constitute evidence, it submits that for the

---

ever, because Mouzon was acquitted of murder, and we reverse his drug conspiracy conviction, there remains no basis for his conviction for possession of a firearm during the commission of a violent crime, and we accordingly reverse that conviction.

purposes of waiver of the last argument, the jury view should be considered new evidence because a defendant is free to argue to the jury, as Mouzon did here, what was observed at the scene in direct contradiction with other testimony or evidence previously introduced. Consequently, the prosecution asserts the trial court was correct in concluding Mouzon introduced evidence because he offered to the jury matters which were newly presented during the view of the scene. Alternatively, the prosecution submits that even if the court committed error, Mouzon suffered no prejudice in not arguing last to the jury. We reject both contentions.

As the United States Supreme Court noted in *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed. (2d) 593 (1975), in a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment. The Court further elaborated on the role of closing argument as a basic and fundamental right of the accused to make his defense:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

In South Carolina, it is well established that where the defendant calls no witnesses and offers no evidence in his behalf, his counsel is entitled to have the concluding argument to the jury. *State v. Crowe*, 258 S.C. 258, 188 S.E. (2d) 379 (1972); *State v. Gellis*, 158 S.C. 471, 155 S.E. 849 (1930); *cf. State v. Garlington*, 90 S.C. 138, 72 S.E. 564 (1911). The right to open and close the argument to the jury is a substantial right, the denial of which is reversible error. *State v. Rodgers*, 269 S.C. 22, 235 S.E. (2d) 808 (1977). Since we found

that Mouzon presented no evidence by requesting the jury visit the crime scene, and no witnesses were offered in his behalf, it follows he was entitled to present the last closing argument, and the denial of such mandates reversal of his convictions.

## II.

Mouzon also contends the trial judge erred in failing to direct a verdict on the charge of conspiracy to distribute crack cocaine. He asserts the evidence failed to show he participated in a conspiracy to sell crack cocaine. We agree and hold this provides another independent basis for reversal of his conspiracy conviction.

A conspiracy is a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object, or achieving by criminal or unlawful means an object that is neither criminal nor unlawful. *State v. Wilson,* 315 S.C. 289, 433 S.E. (2d) 864 (1993). It may be proven by the specific overt acts done in furtherance of the conspiracy, but the gravamen of the offense of conspiracy is the agreement, combination, or mutual understanding. *Id.; State v. Gunn,* 313 S.C. 124, 437 S.E. (2d) 75 (1993). In fact, under South Carolina law, a conspiracy does not require overt acts; the substantive crimes committed in furtherance of the conspiracy simply constitute circumstantial evidence of the existence of the conspiracy, its object and scope. *Wilson,* 433 S.E. (2d) at 868. Moreover, from the overt acts, an inference may be drawn as to the existence and object of the conspiracy. *Id.*

In proving a conspiracy, the State need not show direct contact or explicit agreement between the participants allegedly involved. It is sufficient to show that each participant knew or had reason to know of the scope of the conspiracy, and that each participant had reason to believe his own benefits were dependent upon the success of the entire venture. *State v. Barroso,* 320 S.C. 1, 462 S.E. (2d) 862 (Ct. App. 1995). In *Barroso,* this court further cautioned that in order to provide a conspiracy:

It is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in con-

tact with each other. What is needed is proof they intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged. In reviewing the sufficiency of the evidence, we must exercise caution to ensure the proof sufficient for conviction is not obtained by piling inference upon inference. Proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy, as is mere association with members of the conspiracy. An agreement to distribute drugs, however, can sometimes rationally be inferred from frequent contacts among the defendants and from their joint appearances at transactions and negotiations. (Citations omitted.)

*Id.* at 868.

We further note, that in ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Bryant*, 316 S.C. 216, 447 S.E. (2d) 852 (1994); *State v. Morgan*, 282 S.C. 409, 319 S.E. (2d) 335 (1984). The motion should be granted if the evidence merely raises a suspicion of the defendant's guilt. *State v. Barksdale*, 311 S.C. 210, 428 S.E. (2d) 498 (Ct. App. 1993). However, if the state presents any substantial evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the defendant or from which the defendant's guilt may be fairly and logically deduced, the case must go to the jury. *State v. Prince*, 316 S.C. 57, 447 S.E. (2d) 177 (1993); *State v. Poindexter*, 314 S.C. 490, 431 S.E. (2d) 254 (1993). On appeal from the denial of a motion for directed verdict, this court must view the evidence in the light most favorable to the State. *State v. Schrock*, 283 S.C. 129, 322 S.E. (2d) 450 (1994).

Viewed in the light most favorable to the State, the facts are as follows.[2] At 12:37 a.m. on November 21, 1992, the person (victim) Mouzon was charged with shooting arrived at Lexington County Hospital Emergency Room. He was pale, perspiring, and had a palpable bullet in the midline of his neck. An emergency room physician placed an intratracheal tube

---

[2] Although Mouzon was acquitted of murder, we provide a detailed recitation of the facts surrounding the murder because under the State's theory, the murder and drug conspiracy were intricately related.

through the victim's windpipe to prevent compression of the airway, and a chest tube to evacuate blood out of his collapsed lung. By the time Surgeon Aldin Sweatman arrived and examined the victim, he concluded the victim was amply stable. He sent him for screening to determine if there was any injury to his blood vessels, and then placed him in the Intensive Care Unit. Although he noted the victim appeared "solid as a rock" when he checked him again at 9:00 a.m., Dr. Sweatman was contacted one and a half hour later by a nurse indicating the victim vomited some rather unusual material. Suddenly, the victim's heart rate slowed and his blood pressure dropped. He was rushed to surgery, but bled to death from the gunshot wound. At trial, Dr . Sweatman testified the victim's entry wound inflicted by the bullet was lower than the exit wound. He also acknowledged the emergency room records indicated the victim suffered powder burns.

SLED agent Charles Counts testified he examined the automobile driven by the victim the night of the shooting and discovered the passenger door window on the driver's side was broken out. He found broken glass in the back seat along with a 32-ounce "old and dirty" Budweiser beer bottle. He dusted the car for fingerprints and lifted the palm print of one Cle Jones. On cross-examination, Counts revealed none of Mouzon's fingerprints were found in or on the victim's car. Counts' search of the car also disclosed .005 grams of crack cocaine.

The State's most crucial witness and only eyewitness to the crime was Willie Carl Jones. Jones acknowledged that pursuant to a plea agreement, he had entered a guilty plea to conspiracy to distribute crack cocaine stemming from the present case and faced anywhere from zero to twenty-five years imprisonment. He further admitted the night in question was not his first involvement with crack cocaine. He had a prior conviction for possession of cocaine, and he sold it in order to support his own crack habit. Jones described the area where this incident occurred, the Meetze Road section of Mount Zion, as a heavy drug-dealing area nicknamed the "jungle," and indicated he had lived there his entire life.

In describing the typical atmosphere of the drug deals that occur in the area, Jones stated police were no worry to the assemblage of drug dealers who push and shove each other out

of the way in order to get the sale. He testified approximately twenty-five to thirty cars are "serviced" on a typical Friday or Saturday night in the area. At the solicitor's request, he illustrated for the jury how the drug deals take place:

> As a car comes down the road, okay, there's, say, four or five people with drugs down there. And the first one that gets to the car usually gets the sale. There is a lot of pushing and shoving going on, trying to get up in front of the window to get the sale. And usually the first man up in the window gets the sale.

Jones indicated the drug deals occur in a field located off a dead-end road. He admitted he was present in the field on November 20, 1992, when a vehicle driven by a white male came to the dead-end portion of the road. He observed Curtis Burrows, Scott Mims, and Cle Jones approach the driver's side of the car. When these three men approached the victim's car, Jones testified Mouzon was standing in the field. Jones said as he walked closer to the car, he heard arguing, and it "sounded like the deal was going bad." As the victim's car headed for the dead end, Jones recalled "somebody had hollered that he was trying to jack—and jack means to run away with your dope." Jones said, as would typically happen in this type situation, "everyone scattered around trying to find bottles and things to pick up and throw at the car. . . ." Jones testified the victim's car sped back in their direction and he threw a bottle at the car hoping to break the windshield. He then heard a gunshot. He testified this shot came from where Mouzon was standing, and he observed Mouzon lowering a gun. On cross-examination, however, he acknowledged Mouzon was standing in a field elevated two feet off the ground.[3] Jones also heard a second shot from the same general direction, but didn't know who fired it.

Although Jones testified he, Burrows, Mims, Mouzon, and his brother Cle were all out the night of this incident attempting to sell drugs, he never stated nor is it inferable from his testimony that it was a joint effort. Their pushing and shoving to serve the next customer evidences not that they were act-

---

[3] Although Mouzon was absolved from murder by his acquittal, we note Jones' testimony was clearly inconsistent with powder burns and the entry level of the shot which was lower than the exit wound.

ing in concert, but rather shows they were competitors. In further support of our conclusion that there is no evidence of a conspiracy, we point to Jones' testimony that he did not know the source of anyone's drugs that night except his own. As stated in *Barroso, supra,* to prove conspiracy, "it is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. What is needed is proof they intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged."

Accordingly, we conclude the judge erred in refusing to direct a verdict on the charge of conspiracy to distribute crack cocaine.

Reversed.

GOOLSBY, J., concurs and dissents in separate opinion.

HEARN, J., concurs.

GOOLSBY, Judge (concurring and dissenting):

Like the majority, I would reverse the firearm and conspiracy convictions, but I would do so only on the ground that the trial court erred in denying Mouzon the right to make the final argument to the jury. I do not agree the trial court erred in failing to direct a verdict against the State on the charge of conspiracy to distribute crack cocaine. For that reason, I would remand both charges for retrial.

In reviewing the trial court's refusal to grant a directed verdict of acquittal, we view the evidence in the light most favorable to the State to determine whether there is any evidence, either direct or circumstantial, that reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Breech,* 308 S.C. 356, 417 S.E. (2d) 873 (1992).

The crime of conspiracy is defined by S.C. Code Ann. § 16-17-410 (Supp. 1994) as "a combination between two or more persons for the purpose of accomplishing a criminal or unlawful object or an object neither criminal nor unlawful by a criminal or unlawful means." In order to establish a conspiracy, the State need not show a formal or express agreement, and direct evidence is not essential. *State v. Lagerquist,* 256 S.C. 69

180 S.E. (2d) 882 (1971). A conspiracy may be established by a tacit, mutual understanding that results in the intentional adoption of a common design by two, or more persons to do unlawful acts. *Id.* Proof of an overt act is not required because conspiracy may be shown by circumstantial evidence and the conduct of the individuals involved. *Id.*

Here, Willie Carl Jones testified that in "the Jungle," where Jones sold drugs, if a purchaser of drugs failed to pay, the drug dealers threw bottles and other objects at his car to break the windows so that the "purchaser" would have to pay for new windows. In fact, Jones testified that was exactly what happened in this case.

Jones testified Mouzon was in the Jungle selling drugs that night. Mouzon, upon hearing the purchaser was trying to run away with the drugs, ran behind a nearby house where Mouzon kept his gun and returned to the field.

When the purchaser drove down the street, attempting to run away with the drugs, Jones was about 10 feet behind Mouzon. When the purchaser drove past him, Jones took his eyes off Mouzon to throw a bottle at the car. He then heard a gunshot from right in front of him. He looked toward Mouzon and saw him coming back down with a revolver in his hand after having pointed it straight out at the car. Jones then heard a second shot from the same area in which he and Mouzon were standing. Mouzon was the only person he saw in that area.

It is patently clear that the evidence reasonably tended to prove the following facts: 1) These drug dealers had a mutual understanding that they would enforce payment for one another; 2) Mouzon was selling drugs that night in "the Jungle," with the understanding that the other drug dealers would assist him in enforcing payment for his drug deals; and 3) Mouzon understood he would enforce payment on drug deals in which he was not the seller. In fact, the evidence reasonably tended to show Mouzon assisted in enforcing payment of a drug deal that night by shooting at a purchaser attempting to drive away without paying.

The majority opinion concludes the drug dealers' competition with one another to obtain individual sales suggests they were not acting together for their shared mutual benefit. This analysis misses the point that the illegal tacit agreement here

was to *enforce* payment of the purchases. Under the majority's analysis, competing stores in a shopping center would not gain a shared mutual benefit by chipping in to hire a security guard. I believe the evidence reasonably tended to show the individual dealers gained a *shared mutual benefit* from ensuring whoever made the drug deal would get paid for it.

I would reverse and remand both charges for retrial.