485 S.E.2d 918

The STATE, Petitioner,

v.

Rodney MOUZON, Respondent.

No. 24623.

Supreme Court of South Carolina.

Heard Feb. 4, 1997.

Decided May 27, 1997.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Columbia; and Solicitor Donald V. Myers, Lexington, for Petitioner.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia, for Respondent.

TOAL, Justice.

We granted the State's petition for a writ of certiorari to review the decision of the Court of Appeals reversing Rodney Mouzon's convictions for conspiracy to distribute crack cocaine and possession of a firearm during the commission of a violent crime. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Richard Perry ("Victim") drove to the Mt. Zion area of Lexington County in order to purchase drugs. As he entered the neighborhood, three individuals approached his car and offered to sell him crack cocaine. Rodney Mouzon was standing some distance away from Victim's vehicle. There was testimony that the deal did not go through, that there was an argument between the parties, that Victim's car door slammed, and that Victim tried to leave the area. He drove at a fast pace down the road, but had to turn around when he realized it was a dead-end. Someone yelled that Victim was trying to "jack," meaning that he was trying to run away with the drugs. Everyone scattered, trying to find bottles and other objects to throw at the car. Mouzon ran behind his house to a location where he kept a gun, and he returned to the spot where he was previously standing. As Victim drove past the individuals who had approached him, two shots were fired, one of which struck Victim in his back. One witness, who was himself throwing a bottle at the car, heard a shot, looked up, and saw Mouzon "coming back down with the revolver in his hand."[1] Victim was able to drive himself to a hospital, but died the following day as a result of bleeding caused by the gunshot.

Rodney Mouzon was indicted for murder, conspiracy to distribute crack cocaine, and possession of a firearm during the commission of a violent crime. Mouzon went to trial. He was acquitted on the murder charge, but convicted on the latter two offenses. He was sentenced to twenty-five years' imprisonment and fined $50,000 for conspiracy to distribute crack cocaine, and sentenced to five years, consecutive, for possession of a firearm during the commission of a violent crime.

Mouzon appealed his convictions. The Court of Appeals reversed the conspiracy and firearm convictions. *State v. Mouzon*, 321 S.C. 27, 467 S.E.2d 122 (Ct.App.1995). This Court granted the State's petition for a writ of certiorari on the following questions:

---

**1.** There was testimony that in addition to Mouzon, one other individual had a gun that night.

1. Did the Court of Appeals err in holding that the trial court improperly denied Mouzon his right to the last argument?

2. Did the Court of Appeals err in determining the trial court should have directed a verdict of acquittal based upon insufficient evidence of conspiracy to distribute crack cocaine?

## LAW/ANALYSIS

### A. LAST ARGUMENT

The State argues the Court of Appeals erred in not finding harmless error in the ruling of the trial court that Mouzon's request for a jury view of the scene was evidence that deprived him of the last argument. We disagree.

Mouzon filed a pre-trial motion for a jury view of the neighborhood in which the crimes allegedly occurred. During the course of the trial, the jury was taken to view the neighborhood. The Court considered the jury view as an admission of evidence and, accordingly, declined to allow Mouzon to present the final closing argument. This was error.

S.C.Code Ann. § 14–7–1320 (1976) provides:

The jury in any case may, at the request of either party, be taken to view the place or premises in question or any property, matter or thing relating to the controversy between the parties when it appears to the court that such view is necessary to a just decision . . . .

A viewing of the scene of the crime is not regarded as evidence. *Gossett v. State,* 300 S.C. 473, 388 S.E.2d 804 (1990). It is not a taking of testimony.*State v. Plath,* 281 S.C. 1, 313 S.E.2d 619, *cert. denied,* 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed.2d 862 (1984). Its purpose is simply enable the jurors to better understand the evidence that has been presented to them in the court room. *Jacks v. Townsend,* 228 S.C. 26, 88 S.E.2d 776 (1955). Thus, the trial court erred in considering the jury view as evidence.

In a criminal prosecution, where a defendant introduces no testimony, he is entitled to the final closing argument to the jury. *See State v. Crowe,* 258 S.C. 258, 188 S.E.2d 379,

*cert. denied,* 409 U.S. 1077, 93 S.Ct. 691, 34 L.Ed.2d 666 (1972). Because the jury view was not evidence, and because Mouzon presented no other testimony, he was entitled to the last closing argument.

 The State argues that this error, Mouzon's inability to argue last, was harmless Although the right to open and close the argument to the jury has been described as "a substantial right, the denial of which is reversible error," *see State v. Rodgers,* 269 S.C. 22, 24–25, 235 S.E.2d 808, 809 (1977), we find that such an error is still subject harmless error analysis. The United States Supreme Court in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) distinguished between two types of errors: (1) trial errors which are subject to harmless error analysis, and (2) structural defects in the constitution of the trial mechanism, which defy analysis by harmless error standards. The former occur "during the presentation of the case to the jury," and "may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. at 1264, 113 L.Ed.2d at 330. Structural defects affect the "entire conduct of the trial from beginning to end." *Id.* at 309, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. There is a strong presumption any error can be categorized as a trial error, which may be quantitatively assessed in the context of other evidence presented. *State v. Jefferies,* 316 S.C. 13, 446 S.E.2d 427 (1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995). Moreover, a constitutional error does not automatically require reversal, but may be subject to harmless error analysis. *See Fulminante,* 499 U.S. at 306, 111 S.Ct. at 1263, 113 L.Ed.2d at 329.

 The error here, the denial to the defendant of the right to argue last, falls in the trial error, rather than the structural defect, category. It is not the kind of error that would affect the entire conduct of the trial from beginning to end. *See Jefferies,* 316 S.C. 13, 446 S.E.2d 427 (citing examples of structural defects such as burden-shifting in definition of reasonable doubt; total lack of counsel; biased judge; a certain improper reasonable doubt charge.) Therefore, we may apply harmless error analysis to the present error.

Application of harmless error analysis leads to the conclusion that the error here was not harmless beyond a reasonable doubt. The State argues that Mouzon's closing argument was focussed on contesting the murder charge; Mouzon devoted only two lines at the conclusion of his argument to contesting the charge of conspiracy to distribute crack cocaine. Thus, because Mouzon was acquitted on the murder charge, and because he gave so little attention to the conspiracy charge, he was not prejudiced by the fact that the State got the last argument. Moreover, the State posits that the solicitor did not specifically respond to Mouzon's argument concerning the conspiracy charge. These arguments lack persuasiveness. Firstly, the State's argument really supports Mouzon's position that he was prejudiced. Mouzon focussed on the murder charge and was acquitted of murder; he did not focus on the conspiracy charge and was convicted. In its closing argument, the State devoted a significant amount of attention to the issues of drug dealing and conspiracy. If Mouzon had been allowed to argue last, then he could have more adequately addressed the issue of conspiracy to distribute crack cocaine. Thus, it cannot be concluded that this error was harmless beyond a reasonable doubt, because there is a reasonable possibility that the error complained of might have contributed to the conviction. *See Arnold v. State,* 309 S.C. 157, 420 S.E.2d 834 (1992), *cert. denied,* 507 U.S. 927, 113 S.Ct. 1302, 122 L.Ed.2d 691 (1993).

## B. CONSPIRACY TO DISTRIBUTE CRACK COCAINE

The State argues the Court of Appeals erred when it determined that the trial court should have directed a verdict of acquittal based upon insufficient evidence of conspiracy to distribute crack cocaine. We disagree.

Mouzon was indicted under S.C.Code Ann. § 44–53–375(B) (1996) for conspiracy to distribute crack cocaine. Under the statute,

> A person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts, or conspires to manufacture, distribute, dispense, deliver, or purchase, or possesses with intent to distribute, dispense, or deliver ice, crank, or crack cocaine, in violation of the provisions of Section 44–53–370, is guilty of a felony . . . .

S.C.Code Ann. § 44–53–375(B). The Court of Appeals held that the evidence failed to show that Mouzon participated in a conspiracy to distribute crack cocaine.

A conspiracy is a combination or agreement between two or more persons for the purpose of accomplishing a criminal or unlawful object, or of achieving by criminal or unlawful means an object that is neither criminal nor unlawful. *State v. Ameker*, 73 S.C. 330, 53 S.E. 484 (1906). The gravamen of the offense of conspiracy is the agreement or combination. *State v. Dasher*, 278 S.C. 454, 298 S.E.2d 215 (1982). Thus, the focus is on the sufficiency of the evidence of an agreement between the alleged conspirators and not on the alleged common object. *State v. Gunn*, 313 S.C. 124, 437 S.E.2d 75 (1993), *cert. denied*, 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994). *Gunn* cited the following language from *United States v. Evans*, 970 F.2d 663 (10th Cir.1992), *cert. denied*, 507 U.S. 922, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993):

> What is required is a *shared*, single criminal objective, not just similar or parallel objectives between similarly situated people. . . . It is not enough that a group of people separately intend to distribute drugs in a single area, nor enough that their activities occasionally or sporadically place them in contact with each other. People in the same industry in the same locale (even competitors) can occasionally be expected to interact with each other without thereby becoming coconspirators. What is needed is proof they intended to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged.

*Gunn*, 313 S.C. at 134, 437 S.E.2d at 80–81 (emphasis in original).

*Gunn* directly controls the disposition of the present case. Here, the State has at best shown "similar or parallel objectives between similarly situated people"; it has failed to offer evidence that the parties involved "Intended to act together for their shared mutual benefit within the scope of the conspiracy charged." As envisaged in the *Evans* case, the fact that a group of people are separately intending to distribute drugs in a single area or that they occasionally or sporadically are coming in contact with each other, does not create a conspira-

cy. The testimony offered by the State's witness at trial in this case showed that the drug dealers acted independently:

> As a car comes down the road, okay, there's, say four or five people with drugs down there. And the first one that gets to the car usually gets the sale. There's a lot of pushing and shoving going on, trying to get up in front of the window to get the sale. And usually the first man up in the window gets the sale.

The dealers tried to muscle each other out of the way to try to get up to the car to sell the drugs. Such evidence reveals not an agreement on a shared objective, but parallel and competing objectives.

The State posits that persons in the neighborhood would throw bottles and bricks at cars which attempted to leave when a deal went bad. This fact, it argues, demonstrates the existence of a tacit agreement by the drug dealers to act for the shared mutual benefit of enforcing payment and protecting each other in drug transactions. Accordingly, it asserts, there was evidence that Mouzon was engaged in conspiracy to distribute crack cocaine.

The facts put forth by the State are simply too far removed from conspiracy to distribute crack cocaine to survive a motion for directed verdict. In order to establish the logical nexus between the evidence (of participants throwing objects at vehicles trying to get away) and the conclusion (that this is a conspiracy to distribute crack cocaine), certain assumptions have to be made. Among these assumptions are that (1) the participants were, in throwing bottles and bricks, trying to extract payment for crack cocaine, and not simply trying to inflict injury (or effect street justice) upon those who have not paid for their drugs; and (2) all the participants were acting in concert, and not independently of one another. This argument assumes the very conclusion it is seeking to establish.

However, even if the logical leaps were made, the conclusion that would be reached would be that there was evidence of conspiracy to enforce drug payments. Mouzon was indicted not for conspiracy to enforce drug payments, but for conspiracy to distribute crack cocaine. The State has failed to offer evidence that Mouzon engaged in conspiracy *to distribute*

*crack cocaine.* Thus, we must affirm the Court of Appeals' decision.

## CONCLUSION

Based on the foregoing, we affirm the opinion of the Court of Appeals.

MOORE, WALLER and BURNETT, JJ., and H. DEAN HALL, Acting Justice, concur.