536 S.E.2d 666

**The STATE, Respondent,**

v.

**Delano Rafael COOLEY, Sr., Appellant.**

**No. 25184.**

Supreme Court of South Carolina.

Heard June 6, 2000.

Decided Aug. 14, 2000.

Rehearing Denied Oct. 18, 2000.

64

Beattie B. Ashmore, of Ashmore & Yarborough, P.A., and James F. Brehm, both of Greenville, for appellant.

Attorney General Charles M. Condon, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General J. Benjamin Aplin, all of Columbia, and Solicitor Robert M. Arial, of Greenville, for respondent.

TOAL, Chief Justice:

Appellant Delano Rafael Cooley, Sr., ("Defendant") was convicted of voluntary manslaughter in the death of his wife Donna Cooley ("Victim"). He has appealed. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

On October 26, 1996, Defendant shot and killed Victim as she sat at their dinner table. At trial, Defendant claimed the gun fired accidently while he was showing Victim that it was unloaded. There were no witnesses to the killing, but two of the couple's three young children were in the home at the time of the incident.

One of the children, Delano Cooley, Jr., was nine when his mother was shot and eleven when he testified at trial. He testified the shooting happened on a Sunday. He and Victim, along with the youngest child, had attended church that morning without Defendant who stayed home to watch football on television. That afternoon, the witness and Victim had also gone to the store and gotten water for their house.

Young Cooley testified that Defendant and Victim were "fussing" throughout the day. He testified Defendant accused Victim of having an adulterous affair. At one point in the afternoon, young Cooley testified that Defendant went outside, fired his shotgun into the air, and then returned to threaten Victim stating "That's how it will be" and "I'm not playing with you. I will shoot you." The argument continued until just before the fatal shooting of Victim.

Corey Butler, the oldest child of Defendant and Victim, also testified. His testimony concerned the relationship between his parents in the years prior to the shooting. Butler testified that his parents constantly argued. He told the jury that his father had often physically assaulted his mother and the police were regularly called to the house. Butler testified he moved in with his grandmother two years prior to the shooting because he had gotten into fistfights with his father while trying to protect his mother. In particular, Butler testified on many occasions Defendant would hold a knife to Victim's throat and threaten to kill her and then kill himself.

At the trial's conclusion, Defendant requested the judge charge the jury on involuntary manslaughter and the judge granted his request. In response, the State requested a jury charge on voluntary manslaughter. Defendant opposed the voluntary manslaughter charge contending that the argument between Defendant and Victim could not rise to the level necessary to justify a voluntary manslaughter charge. The trial judge disagreed and charged the jury on voluntary manslaughter. The jury convicted Defendant of voluntary manslaughter. Defendant has appealed and the issues before the Court are:

I.  Did the trial court err in charging the jury on voluntary manslaughter?

II. Did the trial court err in allowing Defendant's oldest son, who had not lived with the family in two years, to testify about the nature of their relationship?

## LAW/ANALYSIS

### I. The Voluntary Manslaughter Jury Charge

■ Voluntary manslaughter is the unlawful killing of a human being in the sudden heat of passion upon sufficient legal provocation. *State v. Cole*, 338 S.C. 97, 525 S.E.2d 511 (2000). Both heat of passion and sufficient legal provocation must be present at the time of the killing. *Id.* The provocation must be such as to render the mind of an ordinary person incapable of cool reflection and produce an uncontrollable impulse to do violence. *See id.*

■ The trial judge in this case should not have given a voluntary manslaughter jury charge because the record contained no evidence to support a finding of sufficient legal provocation. The law to be charged must be determined from the evidence presented at trial. *State v. Lee*, 298 S.C. 362, 380 S.E.2d 834 (1989). The State argues the following evidence supported giving the voluntary manslaughter charge:

1. Defendant and Victim were arguing throughout the afternoon of the killing;

2. The argument was over Defendant's belief that Victim was having an adulterous affair;

3. At one point in the argument, Defendant fired the gun in the backyard and then threatened to kill Victim; and

4. Defendant and Victim were arguing minutes before the gunshot that killed Victim.

The State points to no evidence of Victim provoking Defendant other than her role in the alleged argument with Defendant. Furthermore, the State erroneously focuses on Defendant's firing the gun in the backyard. Defendant's own actions, no matter how outrageous or violent, cannot legally provoke himself.

■ If we accept the State's theory of what happened that afternoon, the argument between Defendant and Victim was about alleged marital infidelity. While adultery may, in

some instances, serve as sufficient legal provocation to warrant a voluntary manslaughter charge, spousal adultery is not a license to kill. *See State v. Gadsden*, 314 S.C. 229, 233, 442 S.E.2d 594, 597 (1994). In general, South Carolina has allowed marital infidelity to support a charge of marital voluntary manslaughter only when the killer finds the other spouse and paramour in a guilty embrace or flagrantly suggestive situation. *See State v. Herring*, 118 S.C. 386, 110 S.E. 668 (1922); *but see State v. Martin*, 216 S.C. 129, 57 S.E.2d 55 (1949)(finding evidence of the husband's belief that the deceased had repeatedly and violently raped his wife and was then taunting them supported a voluntary manslaughter charge). The killing must also happen so soon after the discovery of the affair that the spouse does not have time to coolly reflect on the situation. *See Gadsden*, 314 S.C. at 233, 442 S.E.2d at 597.

■ The State's theory, even if true, is insufficient to warrant a charge of voluntary manslaughter because the State made no allegation that Defendant actually encountered Victim in an adulterous situation. At most, Victim may have confessed to adultery, an admission we find very unlikely due to the lack of any evidence produced at trial of Victim having an affair. Furthermore, a verbal confession of adultery, no matter what the content, would be insufficient to warrant a voluntary manslaughter charge. *See State v. Byrd*, 323 S.C. 319, 322, 474 S.E.2d 430, 432 (1996)("Where death is caused by the use of a deadly weapon, words alone, however opprobrious, are not sufficient to constitute a legal provocation."). Therefore, even if the State's allegations about the argument are taken as true, they do not support the giving of a voluntary manslaughter charge because the allegations do not rise to the level of sufficient legal provocation.

## II. Corey Butler's Testimony

■ Defendant argues the trial court erred in allowing his son to testify about previous episodes of spousal abuse, including incidents where Defendant held a knife to Victim's throat and threatened to kill her. We agree.

Recently, this Court reiterated the rule that "[i]n homicide cases, evidence that the accused and the decedent had previ-

ous difficulty is admissible. The evidence is admissible to show the animus of the parties and to aid the jury in deciding who was the probable aggressor." *State v. Taylor*, 333 S.C. 159, 168, 508 S.E.2d 870, 874 (1998). Here, while it is true that no issue exists about the identity of a probable aggressor, the testimony would be relevant to proving the "animus of the parties," specifically the abusive marital relationship between Defendant and Victim. *See State v. Clinkscales*, 231 S.C. 650, 99 S.E.2d 663 (1957)(finding testimony about prior difficulties between a husband and wife was admissible against husband in a murder case as long as specific details were not revealed).

However, although evidence is relevant, it should be excluded where the danger of unfair prejudice substantially outweighs its probative value. Rule 403, SCRE. In the current case, Butler testified about events that occurred several years prior to the date of the killing. While we recognize that a trial judge is accorded broad discretion in ruling on the admissibility of the testimony, the remoteness in time of these events make them so prejudicial that Butler's testimony about his parent's marital relationship should have been excluded. *See State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999)(excluding evidence of Defendant's bad acts that occurred more than one year before the crime on trial).

### III. Effect of the Error

This Court is aware of the profound consequences of reversing Defendant's voluntary manslaughter conviction. When the jury convicted petitioner of the lesser included offense of voluntary manslaughter, in essence, he was acquitted of the murder charge. *See Bozeman v. State*, 307 S.C. 172, 414 S.E.2d 144 (1992)(holding that a conviction for voluntary manslaughter acts as an implicit acquittal of murder). On retrial, the constitutional prohibition against double jeopardy prevents Defendant from being tried again for murder because he did not waive this defense by making a successful appeal of his conviction. *Id.* Furthermore, based on the testimony presented at Defendant's trial, the result of our holding here is that without any evidence of legal provocation Defendant cannot be retried on the charge of voluntary manslaughter. Thus, retrial will be limited to the charge of involuntary manslaughter.

For most of our State's history, if a defendant was indicted for murder and convicted of manslaughter he could be retried for murder when a new trial was ordered based on the defendant's own motion. *See, e.g., State v. Gillis,* 73 S.C. 318, 53 S.E. 487 (1906). However, in applying the federal Fifth Amendment, the United States Supreme Court has ruled that double jeopardy prevents states from retrying defendants for greater offenses once they have "run the gauntlet" on the greater offense and have not been convicted. *See Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). For example, in a situation nearly identical to the current one, the United States Supreme Court held the retrial of a defendant for murder, after an earlier guilty verdict on the lesser included offense of voluntary manslaughter had been set aside because of a trial error, constituted double jeopardy in violation of the Fifth and Fourteenth Amendments. *See Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

Since the jury heard no evidence of legal provocation, Defendant's voluntary manslaughter conviction suggests that the jury may have compromised between murder and involuntary manslaughter or accident in reaching their verdict. As such, it is fair to assume that at least one member of the jury may have believed the State's position that Defendant murdered Victim by shooting her with a shotgun in the face at close range. However, due to the error in granting the solicitor's request for a voluntary manslaughter charge, Defendant will not have to face a jury of his peers on the charge of murder again. This is a cautionary tale for solicitors as to the pitfalls of requesting a potential "compromise" charge which is unsupported by the evidence. Although the result is an unsatisfactory one, this situation is controlled by the precedent of the United States Supreme Court which we cannot ignore.

## CONCLUSION

Based on the foregoing, we **REVERSE** Defendant's conviction.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.