580 S.E.2d 785

**The STATE, Respondent,**

v.

**William ADAMS, Appellant.**

No. 3640.

Court of Appeals of South Carolina.

Heard April 9, 2003.

Decided May 5, 2003.

Rehearing Denied August 22, 2003.

364

Assistant Appellate Defender Tara S. Taggart, of the SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

ANDERSON, J.:

William Adams was convicted of third degree burglary and grand larceny. He was sentenced to consecutive terms of imprisonment of five years for third degree burglary and five years, suspended upon the service of four years plus five years probation, for grand larceny. These sentences were consecutive to the federal sentence Adams was serving at the time. Adams appeals, arguing that (1) the trial court lacked subject matter jurisdiction under the Interstate Agreement on Detainers Act (IAD); and (2) the trial court erred in failing to declare a mistrial after prejudicial testimony was admitted. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Brian Freeman and his father, both of Red Oak Builders, developed some property for a subdivision called Abner Creek Station in Spartanburg County. Freeman lived adjacent to the subdivision. On the evening of January 21, 1998, Freeman returned to his home after work and noticed the garage door of the model home in the subdivision was open. He contacted the police, noted that two cabinets were missing from the home, and filed a police report. After securing the home, Freeman returned to his house across the street.

In the early morning hours of January 22, 1998, Freeman awoke and discovered that the garage door to the model home

was open again. Freeman called the police. He observed that furniture was missing from the home, including two leather wingback chairs and a cherry wood dining table and chair set.

The police questioned Adams regarding the burglary. Adams gave a statement admitting his participation in the crime. Adams declared he took "some leather chairs and some odds and ends furniture." He showed the police the house in Abner Creek that he burglarized. Adams executed a permission to search form. Police officers recovered the cherry wood dining table and chairs. The leather chairs were never recovered.

In July 1998, Adams was indicted by the Spartanburg County grand jury for second degree burglary and grand larceny in indictments 98–GS–42–3973 (3973) and 98–GS–42–3974 (3974), respectively, in connection with the burglary of the furniture. Adams was not tried, however, because he was incarcerated in federal prison in North Carolina sometime thereafter.

On October 14, 1999, Adams wrote to the solicitor for Spartanburg County requesting a list of charges pending against him. On October 27, 1999, the solicitor's office wrote to Adams, informing him that two charges of second degree burglary and two charges of petit larceny, indictments 98–GS–42–3952 through 3955, were pending against him. No mention was made of indictments 3973 or 3974.

On December 28, 1999, the Federal Bureau of Prisons sent the solicitor a notice indicating that a detainer had been filed against Adams in the State's favor and that Adams was tentatively scheduled for release on July 23, 2001. Adams was given a Notice of Untried Indictments from the Federal Bureau of Prisons, dated February 23, 2000, which listed his Spartanburg untried indictments as indictments 3952, 3953, 3954, 3955, and 3982. It did not list indictments 3973 or 3974.

On May 12, 2000, the solicitor sent the Inmate Systems Manager for the Federal Bureau of Prisons a letter regarding outstanding indictments against Adams. The letter included "certified copies of Indictment # 98–GS–42–3952 through 3955 and # 98–GS–42–3967 through 3982 as detainers" against Adams and requested the prison to advise the State "as to his

intentions concerning disposition of these charges through IAD." Adams was served with copies of the detainers.

On September 11, 2000, Adams sent the solicitor a letter with the subject line "IAD–Notice of Untried Indictments." Adams advised the solicitor that he received the detainers filed against him, waived extradition, and expected his case to be brought to trial within 180 days or else he would seek a dismissal of the charges. A Waiver of Extradition, dated September 6, 2000, and signed by Adams was included with the letter. The waiver stated that Adams was waiving extradition on case numbers 98–GS–42–3952 through 3955 and 98–GS–42–3967 through 3982. Adams included a motion for a fast and speedy trial on indictments numbered 98–GS–42–3952 through 3955 and 98–GS–42–3967 through 3982.

On October 12, 2000, the Inmate Systems Manager for the Federal Bureau of Prisons sent the solicitor a letter informing him that Adams had requested disposition of pending charges against him. In the letter, the Inmate Systems Manager requested that the State take action under the IAD in order to dispose of the pending charges. The letter indicated that the outstanding charges included indictments 3952, 3953, 3954, 3955, and 3982. A certificate of inmate status was sent on the same date. The certificate listed the same indictments. Neither the certificate of inmate status nor the letter listed indictments 3973 or 3974.

Adams was extradited to Spartanburg County. He was tried on indictments 3973 and 3974 in April 2001. Adams complained prior to the start of trial and during the trial that the State should not be allowed to try Adams on indictments 3973 and 3974 because they were not listed in the initial notification of outstanding indictments sent to Adams and because the State did not correct the Federal Bureau of Prisons when it sent the October 12, 2000, certificate of inmate status which failed to list 3973 and 3974. The trial court denied the motion and allowed the State to proceed on the indictments. The State later admitted that it did not have a copy of the detainer.

After the State presented its case, Adams moved for a directed verdict arguing, in part, that the State was not entitled to proceed on indictments 3973 and 3974 under the IAD. The court denied the motion. The jury acquitted Adams

of the second degree burglary charge, but found Adams guilty of the lesser included offense of third degree burglary. Additionally, Adams was convicted of grand larceny.

## ISSUES

I. Did the trial court have subject matter jurisdiction to try Adams under the Interstate Agreement on Detainers Act?

II. Did the trial court err in failing to declare a mistrial after testimony regarding a prior bad act was admitted?

## LAW/ANALYSIS

## I. INTERSTATE AGREEMENT ON DETAINERS ACT (IAD)

Adams contends the trial court did not have subject matter jurisdiction over the burglary and grand larceny charges because the State failed to follow the requirements of the IAD. We disagree.

### A. Requirements of the IAD

We initially address the requirements of the IAD. The purpose of the IAD is to allow participating states to uniformly and expeditiously treat requests by prisoners for disposition of outstanding charges. S.C.Code Ann. § 17–11–10, Art. I (2003); *State v. Patterson,* 273 S.C. 361, 256 S.E.2d 417 (1979); *see also State v. Finley,* 277 S.C. 548, 551, 290 S.E.2d 808, 809 (1982) ("The purpose of I.A.D. is to foster the expeditious disposition of charges outstanding against prisoners so as to eliminate uncertainties which accompany the filing of detainers."). Article III of the IAD provides in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice* of the place of his imprisonment and his request for a final disposition to be made of the

indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned,* the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

. . . .

(d) *Any request for final disposition* made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of *all untried indictments, informations or complaints on the basis of which detainers have been lodged* against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice, request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

§ 17–11–10, Art. III (2003) (emphasis added).

The IAD clearly requires that an inmate send written notice to the appropriate prosecuting officer of his desire for a final

disposition of outstanding indictments against him in that jurisdiction. This notice must include a certificate of the inmate's status at the correctional facility, including his sentence, good time credit, and projected parole date. Although the Federal Bureau of Prisons sent the State a certificate of inmate status on October 12, 2000, it is not clear whether this was accompanied by a copy of Adams' notice for disposition under the IAD. Further, the September 11, 2000 memorandum, which purports to be a notice under the IAD, includes a handwritten note dated September 27, 2000, that Adams did not file the IAD. Because it is unclear whether Adams followed the requirements of § 17–11–10, Art. III(a) regarding notice, Adams may not come within the penumbra of the IAD at all.

█ In any event, it appears that Adams had notice that the State intended to try him on indictments 3973 and 3974. Despite the fact that the October 27, 1999, letter from the solicitor informing Adams of outstanding charges did not list 3973 or 3974, the solicitor filed copies of outstanding indictments 3967 through 3982 with the federal prison as detainers in May 2000. Further, Adams moved for a speedy trial and signed a waiver of extradition on indictments 3967 through 3982. This range of indictments included numbers 3973 and 3974. Because the State eventually lodged a range of detainers against Adams that included 3973 and 3974, and Adams requested a speedy trial and waived extradition on the same range of indictments, Adams' request for disposition operated as a request for final disposition of all untried indictments against him, including 3973 and 3974. See S.C.Code Ann. § 17–11–10 Art. III(d) (2003). Concomitantly, the trial court did not err in finding the requirements of the IAD were followed.

## B. Subject Matter Jurisdiction

### 1. Federal Analysis

Courts have recognized that a violation of the IAD is not recognizable as a claim of lack of subject matter jurisdiction.

In *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the United States Supreme Court referenced the rule announced in *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), that "the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' " *Id.* at 522, 72 S.Ct. 509. The *Frisbie* Court explained:

> [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Id.*

## 2. State Law Explication

Turning to subject matter jurisdiction under South Carolina law, we find no merit to Adams' claims.

 Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the proceedings in question belong. *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). A circuit court acquires subject matter jurisdiction over a criminal matter where there is an indictment which sufficiently states the offense, the defendant waives presentment, or the offense is a lesser included offense of the crime charged in the indictment. *State v. Wilkes,* 353 S.C. 717, 578 S.E.2d 717 (2003); *State v. Primus,* 349 S.C. 576, 564 S.E.2d 103 (2002); *State v. Lynch,* 344 S.C. 635, 639, 545 S.E.2d 511, 513 (2001).

 Lack of subject matter jurisdiction is fundamental and may not be waived. *Hooks v. State,* 353 S.C. 48, 577 S.E.2d 211 (2003). Questions regarding subject matter jurisdiction may be raised at any time. *Carter v. State,* 329 S.C. 355, 495 S.E.2d 773 (1998); *State v. Brown,* 351 S.C. 522, 570 S.E.2d 559 (Ct.App.2002); *see also State v. Ervin,* 333 S.C. 351, 510 S.E.2d 220 (Ct.App.1998) (holding issues related to subject matter jurisdiction may be raised at any time).

■■ An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. *Browning v. State,* 320 S.C. 366, 465 S.E.2d 358 (1995); *State v. Guthrie,* 352 S.C. 103, 572 S.E.2d 309 (Ct.App.2002); *see also Granger v. State,* 333 S.C. 2, 507 S.E.2d 322 (1998) (indictment is sufficient if it apprises defendant of elements of offense intended to be charged and apprises defendant what he must be prepared to meet). The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Browning,* 320 S.C. at 368, 465 S.E.2d at 359; *State v. Reddick,* 348 S.C. 631, 560 S.E.2d 441 (Ct.App.2002).

■ In South Carolina, an indictment "shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided." S.C.Code Ann. § 17–19–20 (2003). An indictment passes legal muster if it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood. *Reddick,* 348 S.C. at 635, 560 S.E.2d at 443.

■■ Adams asserts that he only waived extradition on the indictments initially listed in the solicitor's first letter. Whether Adams was properly transferred to South Carolina for trial on indictments 3973 and 3974, when he argues he only waived extradition on other indictments, is a question of personal jurisdiction. Generally, jurisdiction of the person is acquired when the party charged is arrested or voluntarily appears in court and submits himself to its jurisdiction. *State v. Douglas,* 245 S.C. 83, 138 S.E.2d 845 (1964); *State v. Langford,* 223 S.C. 20, 73 S.E.2d 854 (1953). A defendant may

waive any complaints he may have regarding personal jurisdiction by failing to object to the lack of personal jurisdiction and by appearing to defend his case. *See State v. Bethea*, 88 S.C. 515, 70 S.E. 11 (1911); *see also State v. Castleman*, 219 S.C. 136, 138–39, 64 S.E.2d 250, 251 (1951) ("A defendant may, of course, waive his objection to the jurisdiction of the Court over his person . . . ."); *Town of Ridgeland v. Gens*, 83 S.C. 562, 65 S.E. 828 (1909) (the court found no personal jurisdiction problem where the defendant appeared for his trial, was represented by an attorney, and defended his case on the merits). Questions of personal jurisdiction will not deprive a trial court of subject matter jurisdiction.

█ Further, Adams does not claim that indictments 3973 and 3974 failed to adequately state the elements of the offenses for which he was charged. He does not allege that the indictments failed to adequately apprise him of what he must be prepared to meet. Nothing in the IAD purports to deprive a trial court of subject matter jurisdiction where the notice requirements are not followed. Moreover, the indictments apprised Adams of the elements of the offenses intended to be charged and informed him of what circumstances he must be prepared to defend. *See Locke v. State*, 341 S.C. 54, 533 S.E.2d 324 (2000) (indictment is sufficient to convey jurisdiction if it apprises defendant of elements of offense intended to be charged and informs defendant of circumstances he must be prepared to defend). The indictments stated the offense with sufficient certainty and particularity to enable the trial court to know what judgment to pronounce and Adams to know what he was being called upon to answer. *See State v. Lynch*, 344 S.C. 635, 545 S.E.2d 511 (2001) (indictment is sufficient to confer jurisdiction if offense is stated with sufficient certainty and particularity to enable court to know what judgment to pronounce, and defendant to know what he is called upon to answer). Because the indictments adequately alleged the elements of the charges against Adams, the trial court had subject matter jurisdiction.

## II. MISTRIAL

Adams maintains the trial court erred in admitting testimony regarding the previous theft of the cabinets because it

amounted to the prejudicial admission of a prior bad act. He claims the court should have declared a mistrial. We disagree.

Adams objected when Freeman testified regarding the two cabinets missing from the model home when he first noticed something suspicious at the model home in Abner Creek. Adams requested a mistrial, arguing that he was not being tried in connection with the missing cabinets, the testimony was not relevant, and the jury was prejudiced "from hearing that the same crime occurred within a couple of hours before." The State alleged the information regarding the cabinets taken in the first burglary, during the day, was relevant to show that the more expensive furniture was not taken until the second burglary, during that evening and the early morning hours. The trial judge ruled the State could introduce the testimony and asked Adams whether he would like a jury instruction to the effect that he was not being tried in connection with the taking of the cabinets. Adams refused the jury instruction and renewed his motion for a mistrial. The court found the evidence admissible and denied the motion for a mistrial.

The decision to grant or deny a mistrial is within the sound discretion of the trial judge. *State v. Cooper*, 334 S.C. 540, 514 S.E.2d 584 (1999); *State v. Thompson*, 352 S.C. 552, 575 S.E.2d 77 (Ct.App.2003). The court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Harris*, 340 S.C. 59, 530 S.E.2d 626 (2000); *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *see also State v. Arnold*, 266 S.C. 153, 157, 221 S.E.2d 867, 868 (1976) (the general rule of this State is that "the ordering of, or refusal of a motion for mistrial is within the discretion of the trial judge and such discretion will not be overturned in the absence of abuse thereof amounting to an error of law.").

"The power of a court to declare a mistrial ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious causes" stated into the record by the trial judge. *State v. Kirby*, 269 S.C. 25, 28, 236 S.E.2d 33, 34 (1977); *see also State v. Patterson*, 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999) (mistrial should only be granted

in cases of manifest necessity and with the greatest caution for very plain and obvious reasons). The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way. *State v. Beckham,* 334 S.C. 302, 513 S.E.2d 606 (1999); *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998).

■■■■ A mistrial should only be granted when "absolutely necessary," and a defendant must show both error and resulting prejudice in order to be entitled to a mistrial. *Harris,* 340 S.C. at 63, 530 S.E.2d at 628; *see also State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) (mistrial should not be granted unless absolutely necessary; to receive mistrial, defendant must show error and resulting prejudice). "The less than lucid test is therefore declared to be whether the mistrial was dictated by manifest necessity or the ends of public justice." *State v. Prince,* 279 S.C. 30, 33, 301 S.E.2d 471, 472 (1983). "Whether a mistrial is manifestly necessary is a fact specific inquiry." *State v. Rowlands,* 343 S.C. 454, 457, 539 S.E.2d 717, 719 (Ct.App.2000).

■■■■ A mistrial should not be ordered in every case where incompetent evidence is received. *State v. Johnson,* 334 S.C. 78, 512 S.E.2d 795 (1999). "An instruction to disregard objectionable evidence is usually deemed to cure the error in its admission unless on the facts of the particular case it is probable that notwithstanding such instruction the accused was prejudiced." *Id.* at 89–90, 512 S.E.2d at 801.

## A. Relevance

Adams argues that a mistrial was necessary because evidence regarding the prior theft of the cabinets was not relevant to the charges for which he was on trial.

■■■■ The admission or exclusion of evidence is left to the sound discretion of the trial judge. *State v. Gaster,* 349 S.C. 545, 564 S.E.2d 87 (2002); *State v. Saltz,* 346 S.C. 114, 551 S.E.2d 240 (2001). A court's ruling on the admissibility of evidence will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant. *State v. Hamilton,* 344 S.C. 344,

543 S.E.2d 586 (Ct.App.2001); *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000). An abuse of discretion occurs when the trial court's ruling is based on an error of law. *State v. McDonald,* 343 S.C. 319, 540 S.E.2d 464 (2000); *State v. Mattison,* 352 S.C. 577, 575 S.E.2d 852 (Ct.App.2003).

All relevant evidence is admissible. *State v. Aleksey,* 343 S.C. 20, 538 S.E.2d 248 (2000); Rule 402, SCRE. Under Rule 401, SCRE, evidence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy. *State v. King,* 349 S.C. 142, 561 S.E.2d 640 (Ct.App.2002); *see also* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *In the Matter of the Care and Treatment of Corley,* 353 S.C. 202, 577 S.E.2d 451 (2003) (evidence is relevant if it tends to establish or make more or less probable the matter in controversy).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE; *see also State v. Cooley,* 342 S.C. 63, 536 S.E.2d 666 (2000) (although evidence is relevant, it should be excluded where danger of unfair prejudice substantially outweighs its probative value). A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances. *Hamilton,* 344 S.C. at 357, 543 S.E.2d at 593. We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment. *Id.* at 358, 543 S.E.2d at 593.

The evidence regarding the theft of the cabinets from the first burglary was relevant to the overall timing of events in this case. Freeman noticed the first burglary occurred after he returned home from work and he knew that only cabinets were missing at that time. Because testimony regarding the first burglary was admitted, testimony regarding what was taken in the first burglary was relevant to the issue of whether the furniture was taken in the later burglary. No evidence was presented at trial that Adams was a suspect in

the burglary of the cabinets. As the evidence was relevant to the timing of the events in this case, we find no error in its admission. *See Aleksey,* 343 S.C. at 35, 538 S.E.2d at 256 (trial judge is given broad discretion in ruling on questions concerning relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion).

Furthermore, Adams refused an instruction to the jury not to consider the first burglary against Adams. The evidence admitted in this case was relevant and its admission did not require the extreme remedy of a mistrial.

### B. *Res Gestae /Lyle*

Adams contends the trial court erred in allowing the admission of evidence regarding the theft of the cabinets because it amounted to the prejudicial admission of a prior bad act.

Our Supreme Court discussed the *res gestae* theory in *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996):

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . .' [and is thus] part of the res gestae of the crime charged." And where evidence is admissible to provide this "full presentation" of the offense, "[t]here is no reason to fragmentize the event under inquiry" by suppressing parts of the "res gestae."

*Id.* at 122, 470 S.E.2d at 370–71 (quoting *United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980)). Under the *res gestae* theory, evidence of other bad acts may be an integral part of the crime with which the defendant is charged or may be needed to aid the fact finder in understanding the context in which the crime occurred. *State v. Owens,* 346 S.C. 637, 552

S.E.2d 745 (2001); *State v. King,* 334 S.C. 504, 514 S.E.2d 578 (1999).

 We rule the testimony regarding the cabinets was admissible under the *res gestae* theory. The timing of the burglaries, and what was taken from the model home in each one, were integral parts of the context in which the crime was committed. Thus, admission of the testimony regarding the cabinets was necessary and relevant to a full presentation of the evidence. The trial court did not err in allowing the admission of the evidence under the *res gestae* theory. Additionally, the court properly denied Adams' motion for a mistrial.

 Further, although Adams now argues on appeal that the admission of evidence regarding the theft of the cabinets amounted to the improper admission of a prior bad act in violation of *Lyle*,[1] he did not raise this argument before the trial court. Arguments not raised to or ruled upon by the trial court are not preserved for appellate review. *See State v. Perez,* 334 S.C. 563, 514 S.E.2d 754 (1999) (issues not raised to and ruled upon by the trial court will not be considered on appeal). Moreover, a defendant may not argue one ground below and another on appeal. *See State v. Benton,* 338 S.C. 151, 526 S.E.2d 228 (2000) (issue not preserved if defendant argues one ground for objection at trial and a different ground on appeal). As Adams' *Lyle* argument is not properly before this Court, we decline to address it.

### C. Harmless Error

 Finally, we find that even assuming the trial court erred in allowing testimony regarding the prior theft of the cabinets, the error was harmless.

 Error is harmless where it could not reasonably have affected the result of the trial. *State v. Charping,* 313 S.C. 147, 437 S.E.2d 88 (1993); *State v. Burton,* 326 S.C. 605, 486 S.E.2d 762 (Ct.App.1997). Generally, appellate courts will

---

1. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923) (evidence of accused's other crimes or wrongs is generally not admissible to prove his propensity to commit the crime charged, but may be admissible to show motive, identity, common scheme or plan, absence of mistake or accident, or intent).

not set aside convictions due to insubstantial errors not affecting the result. *State v. Sherard,* 303 S.C. 172, 399 S.E.2d 595 (1991); *State v. Livingston,* 282 S.C. 1, 317 S.E.2d 129 (1984). Thus, an insubstantial error not affecting the result of the trial is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached." *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989); *see also State v. Kelley,* 319 S.C. 173, 460 S.E.2d 368 (1995) (when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside conviction for insubstantial errors not affecting result).

Adams confessed to the police regarding the break-in and theft of the furniture from the home. He led police to the site of the burglary and helped in the recovery of some of the items. Assuming the admission of Freeman's testimony regarding the theft of the cabinets from the first burglary was error, it did not affect the evidence that supported Adams' guilt in the second burglary. We conclude the evidence supporting Adams' conviction rendered any error harmless.

## *CONCLUSION*

Adams waived extradition under the IAD for a range of indictments, including 3973 and 3974. These indictments informed Adams of the charges against him and apprised him of what he had to defend against. The indictments were sufficient to convey subject matter jurisdiction on the circuit court. Because the evidence regarding the theft of the cabinets was relevant and was admissible under the *res gestae* theory, the trial court did not err in denying Adams' motion for mistrial. Accordingly, Adams' convictions and sentences are

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.