609 S.E.2d 528

The STATE, Respondent,

v.

Thurman O'Neil SMITH, Jr., Appellant.

No. 3916.

Court of Appeals of South Carolina.

Heard Nov. 10, 2004.

Decided Jan. 10, 2005.

Withdrawn, Substituted and Refiled Feb. 10, 2005.

112

Edward T. Hinson, Jr., of Charlotte, NC, and Leland Bland Greeley, of Rock Hill, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant and Attorney General David Spencer, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

STILWELL, J.:

Thurman O'Neil Smith, Jr. was tried for murder and possession of a firearm during the commission of a violent crime and convicted of voluntary manslaughter and the weapons charge. He appeals, arguing the evidence did not support either the verdict of voluntary manslaughter or its submission as a verdict option. We reverse.

## BACKGROUND

On June 10, 2002, Smith's 16–year–old daughter told her mother her paternal grandmother's husband, Tommy Moss, molested her when she was approximately 8 years old. She said the molestation happened at her grandmother's home while her grandmother was sleeping. Although she did not

tell her parents at the time, she never spent the night at her grandmother's home again.

Around 7:00 a.m. the next day, Smith's wife relayed the allegation to Smith. Although shaken by the news, Smith went to work until about 3:15 p.m., when he left one work site and stopped by another to give a price estimate. Smith arrived at home between 4:00 and 4:20 p.m. While there, he had a beer and talked for about 45 minutes to his wife and daughter about the alleged molestation. They discussed seeking counseling for Smith's daughter, which spurred Smith to call his therapist to arrange an appointment. They also discussed whether law enforcement could be involved and about exposing what Moss had done. Smith then showered, talked to the therapist, and retrieved a gun from his dresser. He left the house, with his wife and daughter unaware he had the gun and under the impression he was going to a lake he frequented.

Instead, Smith drove to the home of a friend, and without mentioning the molestation allegation, discussed target practice. During the discussion, he asked his friend's son or the son's friend to go buy some shells for him, which he did. Smith left and stopped at a local bar and grill around 5:30 p.m. He talked with another friend, Tommy Edwards, and drank part of a beer. The two walked outside and continued to talk. Smith told Edwards about the alleged molestation of his daughter and the earlier abduction and death of another daughter many years before.

After Edwards left, Smith loaded the gun with six bullets and started driving to the home of his mother and stepfather. Along the way, Smith stopped and removed the bullets, but he put two back in the gun. He arrived at the Mosses' home about twenty minutes later.

Smith's mother, Loretta, saw a truck she did not recognize[1] arrive in her driveway. When Smith stepped out of his truck, Loretta then recognized her son. Smith was yelling, asking Loretta something to the effect of "Where is that son of a bitch you're married to?" He screamed out the accusations against Moss, and Loretta responded Smith was wrong and

---

1. Smith and his mother had been estranged for nearly three years.

his daughter was a "lying slut." Loretta testified Smith said, "I've come down here to kill you" to Moss. At this point, Moss was outside at his doorway. Smith was waving the gun, and Loretta was asking him to put the gun away. Moss possibly raised his hand and made contact with Smith's arm, and the gun fired. Moss was shot and he fell blocking the door, requiring Loretta to enter the house from the back to call for emergency assistance. Moss died.

## DISCUSSION

██ Smith argues the trial court erred in charging the jury on the law of voluntary manslaughter and allowing the jury's voluntary manslaughter guilty verdict to stand. We agree.

██ The trial court must determine the law to be charged based on the evidence at trial. *State v. Crosby*, 355 S.C. 47, 51, 584 S.E.2d 110, 112 (2003). When the record contains no evidence to support it, a voluntary manslaughter jury charge should not be given. *See State v. Cooley*, 342 S.C. 63, 67–68, 536 S.E.2d 666, 668–69 (2000).

██ In considering a new trial motion based on insufficiency of the evidence, the trial court is concerned with the existence of evidence rather than its weight. *See State v. Pauling*, 264 S.C. 275, 278, 214 S.E.2d 326, 327 (1975). The weight of the evidence is a question for the jury. *Id.* Where there is any evidence supporting the jury's verdict, the court commits no error in denying the motion. *Id.*

> Voluntary manslaughter is the unlawful killing of a human being in the sudden heat of passion upon sufficient legal provocation. Both heat of passion and sufficient legal provocation must be present at the time of the killing. The provocation must be such as to render the mind of an ordinary person incapable of cool reflection and produce an uncontrollable impulse to do violence.

*State v. Cooley*, 342 S.C. at 67, 536 S.E.2d at 668 (internal citations omitted). Even if sufficient legal provocation has aroused a defendant's passion, "if at the time of the killing those passions had cooled or a sufficiently reasonable time had elapsed so that the passions of the ordinary reasonable person would have cooled, the killing would be murder and not

manslaughter." *State v. Knoten,* 347 S.C. 296, 303, 555 S.E.2d 391, 395 (2001).

Assuming without deciding sufficient legal provocation existed in this case, the evidence clearly does not establish Smith acted in the sudden heat of passion. Smith heard the allegation early in the morning, went to work, talked to his family and called to make his daughter an appointment with a therapist, went to a friend's house to talk, dropped by a bar where he talked with another friend, and finally arrived at Moss's home in the evening. This was certainly a long enough period to render Smith capable of cool reflection. Also, during this time he retrieved his gun, had someone buy him ammunition, loaded the gun, unloaded it, and reloaded it. Although there was testimony he was upset, this evidence suggests he in fact coolly reflected on the situation. Because demonstration of sudden heat of passion is required to establish voluntary manslaughter, the evidence supports neither the voluntary manslaughter verdict option nor the verdict itself.

As a consequence of our reversal of Smith's conviction on the charge of voluntary manslaughter, we also reverse his conviction for possession of a firearm during the commission of a violent crime, because the former is a prerequisite for the latter. S.C.Code Ann. § 16–23–490 (2003) (providing contemporaneous indictment and conviction of violent crime prerequisite to punishment under section 16–23–490). Absent the voluntary manslaughter conviction, Smith's conviction for violation of section 16–23–490 cannot stand. *State v. Taylor,* 356 S.C. 227, 235 n. 4, 589 S.E.2d 1, 5 n. 4 (2003); *State v. Mouzon,* 321 S.C. 27, 29 n. 1, 467 S.E.2d 122, 124 n. 1 (Ct.App.1995).

**REVERSED.**[2]

SHORT, J., concurs.

ANDERSON, J., dissents and concurs in a separate opinion.

---

**2.** The majority thoroughly agrees with the dissent that *State v. Cooley* would allow Smith to be tried on a charge of involuntary manslaughter. Even though this court does not specifically remand for that purpose, that option remains open should the solicitor in his discretion determine the facts of the case warrant it.

ANDERSON, J., dissenting and concurring:

I **VOTE** to **REVERSE** and **REMAND** for a new trial on involuntary manslaughter. In my judgment, a reversal is proper in regard to the charge of voluntary manslaughter, but the case must be remanded for the purpose of a new trial on involuntary manslaughter.

I am convinced that a retrial of the defendant on the charge of involuntary manslaughter is proper. In *State v. Cooley,* 342 S.C. 63, 536 S.E.2d 666 (2000), our supreme court edified:

Furthermore, based on the testimony presented at Defendant's trial, the result of our holding here is that without any evidence of legal provocation Defendant cannot be retried on the charge of voluntary manslaughter. Thus, retrial will be limited to the charge of involuntary manslaughter.

*Id.* at 69, 536 S.E.2d at 669.

Applying *Cooley,* a reversal encapsulates a retrial on involuntary manslaughter.