# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Clarence Kendall Cook, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2013-000366

---

Appeal From Marlboro County
Brooks P. Goldsmith, Circuit Court Judge

---

Opinion No. 27596
Submitted October 15, 2015 – Filed December 9, 2015

---

## REVERSED

---

Appellate Defender Kathrine H. Hudgins, of Columbia,
for Petitioner.

Attorney General Alan McCrory Wilson , of Columbia,
and Assistant Attorney General Joshua L. Thomas, of
Greenwood, for Respondent.

---

**JUSTICE BEATTY**:  A grand jury indicted Clarence Kendall Cook for murder, unlawful possession of a pistol, and possession of a weapon during the commission of a violent crime.  After a jury trial, Cook was convicted of voluntary manslaughter and possession of a weapon during the commission of a violent crime.  Cook filed a post-conviction relief ("PCR") application, which was dismissed after a hearing.  Following the dismissal of his PCR application, Cook petitioned this Court for a writ of certiorari pursuant to *White v. State*, 263 S.C.

110, 208 S.E.2d 35 (1974).  We granted certiorari to determine whether the trial court erred in charging the jury with the lesser-included offense of voluntary manslaughter.  We reverse.

## I.    Factual/Procedural History

At the time of the incident that gave rise to this appeal, Cook and Charles Hayes ("Victim") lived in the Marlboro Court apartment complex in Marlboro County.  Cook, who lived in the apartment above Victim, contended that Victim had constantly been berating him, calling Cook, *inter alia*, a "snitch" for testifying in a murder trial against an individual tied to Victim as well as for telling their landlord that Victim was allegedly selling drugs out of his apartment.

At approximately 4:00 p.m. on June 10, 2010, Cook, his girlfriend, and his cousin were on their way to the grocery store when Cook and Victim exchanged the following text messages:

> Victim:  "You f*** n***a I herd u being sh*t about me n***a and about the bullsh*t that going on around here.  I don't have sh*t to do with it, so keep my name out your mouth."

> Cook:  "U aint sh*t 2 b talkn bout I dnt care bout yal or wat u movn I dnt want u it aint me no words 4 u or los life goes on."

> Victim:  "N***a f*** u."

> Cook:  "Lol."

At approximately 6:00 p.m. that evening, the three returned to the apartment complex to find Victim sitting outside on the porch.  As they walked upstairs, Victim made a series of threatening comments directed at Cook echoing similar sentiments from the text messages he sent earlier that day.  According to Cook, Victim was saying "you ain't nothin' but a snitch ass p***y n***a."; "I can get that n***a touched"; and, "look at him and his b*tch."  While Cook admitted Victim's last comment was "enough to really strike [him] in [his] heart," Cook continued up the stairs without saying anything to Victim.

Once inside the apartment, Cook ate some watermelon, placed the watermelon rinds inside a plastic bag, grabbed his gun from under the couch, and

went downstairs to discard the bag. According to Cook, once downstairs, he did not have a chance to get to the dumpster because Victim was approaching him, grimacing and threatening to shoot him in "broad daylight." Cook stated Victim had one of his hands in his back pocket, acting as if he had a gun and was going to pull it out and shoot Cook at any moment.[1] At this time, Victim's nephew, Terrance Bridges, was approaching Cook in the opposite direction as if he was about to "jump" him. Cook and Victim then exchanged the following words:

Victim:     "You f*** n***a. You ain't nothing but a snitch."

Cook:       "Who you callin' a f*** n***a?"

Victim:     "You."

Cook:       "What?"

Cook said he tried to keep walking down the sidewalk, but Victim kept cutting him off. According to Cook, Victim continued to approach Cook huffing, grimacing, and threatening to kill him. At that point, Cook said "the dude was coming up" and "before I knew it, I fired a shot." Cook said he then fired a second shot and ran. Both shots struck Victim in the face. When asked why he fired the second shot, Cook replied "to make sure he was gone." In his oral statement, Cook further explained: "I was terrified." "I didn't even sit there for a second. As soon as I saw him reaching I just shot." "I wasn't taking any chances." "It was either me or him, man, it really was."

Bridges testified he saw Victim get up and walk over to Cook. He said "from there on they were just talking real softly." He stated he "could hardly tell it was an argument." Then Cook stepped back, pulled out a gun and shot Victim. According to Bridges, Cook then walked over Victim, did some kind of gesture, shot Victim again, and ran.

Victim's girlfriend, Kim Brown, was also outside at the time of the incident. At trial, Brown testified that once Cook came downstairs she saw Victim approach Cook and say "keep my name out of all this mess y'all got going on out here. I don't have nothing to do with that." The next thing she heard was a gunshot. After

---

[1] A gun was never found on Victim.

seeing Victim fall to the ground, Brown testified she saw Cook walk over Victim and shoot him again.  According to Brown, Cook then dropped the bag and ran.

A grand jury indicted Cook for murder, unlawful possession of a pistol, and possession of a weapon during the commission of a violent crime.  At trial, Cook claimed self-defense.  At the close of the State's case, the State withdrew the unlawful possession of a pistol charge.  At the close of the defense, the trial court, upon the State's request, and over Cook's objection, instructed the jury on the law of the lesser-included offense of voluntary manslaughter.[2]  After deliberations, the jury returned a verdict of guilty of voluntary manslaughter and guilty of possession of a weapon during the commission of a violent crime.  The trial court sentenced Cook to twenty years' imprisonment and a consecutive, five-year sentence for possession of a weapon during the commission of a violent crime.

Cook filed a PCR application.  After a hearing, the PCR judge denied relief and dismissed Cook's application.  Cook then filed a petition for a writ of certiorari asserting the PCR judge erred in finding Cook was not entitled to a direct appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974).  We granted the petition and directed the parties to brief the issue of whether the trial court erred in charging the jury with the lesser-included offense of voluntary manslaughter when there was no evidence of the element of sudden heat of passion required for voluntary manslaughter.

## II.     Standard of Review

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).  "An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion." *State v. Commander*, 396 S.C. 254, 270, 721 S.E.2d 413, 421-22 (2011).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).  "The trial court must determine the law to be charged based on the evidence at trial." *State v. Smith*, 363 S.C. 111, 115, 609 S.E.2d 528, 530 (Ct. App. 2005).  "When

---

[2] Curiously, even though the State requested a voluntary manslaughter charge, in its closing argument, the State said: "Use your common sense.  This is murder.  It is not self-defense.  It is not manslaughter it is murder."

the record contains no evidence to support it, a voluntary manslaughter jury charge should not be given." *Id.*

## III.    Discussion

Cook asserts the trial court erred in charging the jury with the lesser-included offense of voluntary manslaughter because there was no evidence that he was acting in the sudden heat of passion.  We agree.

"Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Walker*, 324 S.C. 257, 260, 478 S.E.2d 280, 281 (1996).  "Both heat of passion and sufficient legal provocation must be present at the time of the killing." *Id.*  At trial, Cook conceded that there was sufficient legal provocation.  Therefore, the narrow issue on appeal is whether Cook was acting in the sudden heat of passion when he killed Victim.

"Whether or not the facts constitute a sudden heat of passion is an appropriate question for the court." *State v. Niles*, 412 S.C. 515, 522, 772 S.E.2d 877, 880 (2015).  This Court has defined the sudden heat of passion as that which:

> upon sufficient legal provocation, . . . mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence.

*Id.* (citing *State v. Walker*, 324 S.C. 257, 260, 478 S.E.2d 280, 281 (1996)).

We do not believe the facts of this case support a finding that Cook shot Victim in the sudden heat of passion.  Here, Cook stated he tried to walk away from Victim, but Victim kept cutting him off.  The fact that Cook was trying to walk away from the conflict does not suggest Cook was incapable of cooling off. In addition, Bridges testified that Cook and Victim were talking softly and that he could hardly tell they were arguing.  This too does not suggest that Cook was acting under an uncontrollable impulse to do violence as surely if one was so enraged to kill, one would not be talking softly with the victim right before the act. Further, at no point during Cook's statement does he indicate he lacked control

over his actions.  Accordingly, we believe the facts of this case suggest Cook shot Victim either with malice or in self-defense.

In finding otherwise, the trial court relied on the following facts:  (1) that Cook was in fear; (2) Cook shot Victim twice; and (3) Cook's statement "before I knew it, I fired a shot."  We believe these facts, without more, are insufficient to establish Cook was acting in the sudden heat of passion.

In *State v. Starnes*, we affirmed the principle that "to warrant a voluntary manslaughter charge, the defendant's fear must manifest itself in an uncontrollable impulse to do violence."  388 S.C. 590, 598-99, 698 S.E.2d 604, 609 (2010).  We do not believe the fact that Cook shot Victim twice or his statement "before I knew it, I fired a shot" is evidence that Cook's fear manifested in an uncontrollable impulse to do violence.

In *State v. Niles*, Niles shot at the victim twice after the victim pulled out his gun and shot at Niles, knocking out the rear windows of Niles' vehicle.  412 S.C. at 520, 772 S.E.2d at 879.  Niles stated, "I shot twice.  I went pow, pow."  *Id.*  Niles, like Cook, shot at the victim twice; yet, we determined that fact was not enough to establish Niles was acting under an uncontrollable impulse to do violence.  We find the same here.  Finally, we do not believe Cook's statement "before I knew it, I fired a shot" warrants a charge of voluntary manslaughter.  The State argues this statement could be interpreted to mean Cook lacked self-control when he shot Victim, and thus acted under an uncontrollable impulse to do violence.  We disagree.  Due to the short, swift motion of firing a gun, we believe this statement could be heard in any case in which the defendant is charged with firing a weapon, even out of self-defense.  Thus, we do not believe this statement is indicative as to whether Cook was acting under an uncontrollable impulse to do violence.

In addition to the facts articulated and relied upon by the trial court, the State relies on our holding in *State v. Lowry* to support its position that this Court should affirm the trial court's decision to charge voluntary manslaughter.  315 S.C. 396, 434 S.E.2d 272 (1993).  We find *Lowry* distinguishable from this case.

In *Lowry*, the victim approached Lowry outside a grocery store and began berating him.  *Id.* at 398, 434 S.E.2d 273.  The two men began arguing and "bumping chests."  *Id.*  Lowry then aimed a pistol at the victim and pulled the trigger, but the pistol was unloaded.  *Id.*  After Lowry's friend broke up the fight, the victim went inside the store.  *Id.*  Lowry, loaded a clip of ammunition into his

pistol, fired a single shot into a nearby sign, and followed victim into the store where the two began arguing again. *Id.* The victim then raised his arms above his head, taunting Lowry. *Id.* Lowry then shot him in the chest, cursed him, and shot him again, but this time in the head. *Id.* This Court determined the trial court erred in refusing to instruct the jury regarding the offense of voluntary manslaughter because there was testimony which, if believed, tended to show the victim and Lowry were in a heated argument. *Id*. at 399, 434 S.E.2d at 274.

In *Lowry*, there was both a physical and verbal altercation to support a finding of sudden heat of passion. Here, there was only a verbal altercation, which was very brief. Further, in *Lowry*, it was evident to the witnesses that there was an altercation between Lowry and the victim due to their conduct. In contrast, the witnesses here could hardly tell Cook and Victim were arguing. In addition, Lowry actively pursued the victim, whereas Cook attempted to walk away from Victim. Collectively, Lowry's actions suggest that he was acting in the sudden heat of passion. Cook's actions do not do the same.

"The law to be charged to the jury is determined by the evidence presented at trial." *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). "[D]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982). "The jury's discretion is thus channeled so that it may convict a defendant of any crime fairly supported by the evidence." *Id.* Here, the evidence presented at trial indicates Cook either shot Victim with malice or in self-defense. Unfortunately, however, as this Court has previously articulated:

> due to the error in granting the solicitor's request for a voluntary manslaughter charge, [Cook] will not have to face a jury of his peers on the charge of murder again. This is a cautionary tale for solicitors as to the pitfalls of requesting a potential "compromise" charge which is unsupported by the evidence.

*State v. Cooley*, 342 S.C. 63, 70, 536 S.E.2d 666, 670 (2000).

## IV. Conclusion

For the foregoing reasons, we reverse Cook's voluntary manslaughter conviction.[3]

**REVERSED**.

**TOAL, C.J., KITTREDGE and HEARN, JJ., concur. PLEICONES, J., not participating.**

---

[3] Due to our reversal of Cook's voluntary manslaughter conviction, we also reverse his conviction for possession of a weapon during the commission of a violent crime, as the former conviction is a prerequisite for the latter. *See* S.C. Code Ann. § 16-23-490(e) (2003) (providing contemporaneous indictment and conviction of violent crime a prerequisite to punishment under section 16-23-490).